594 P.2d 1029

**Lino SILVAS, Plaintiff/Appellant,**

v.

**SPEROS CONSTRUCTION COMPANY, an Arizona Corporation, Defendant/Appellee.**

**No. 2 CA–CIV 3047.**

Court of Appeals of Arizona, Division 2.

March 29, 1979.

Rehearing Denied April 25, 1979.

Review Denied May 8, 1979.

Miller, Pitt & Feldman, P. C. by Richard L. McAnally and John L. Tully, Tucson, for plaintiff/appellant.

Slutes, Browning, Zlaket & Sakrison, P. C. by William D. Browning, Tucson, for defendant/appellee.

OPINION

HOWARD, Judge.

This is a construction site accident case. Appellant was injured when he fell through a hole in the roof of a building under construction. The trial court directed a verdict in favor of the appellee, the general contractor. The propriety of the directed verdict hinges on two questions: (1) What was appellee's duty, if any, to the employees of a subcontractor? (2) Did the fact that appellant knew of the existence of holes on the roof relieve appellee of any liability? We shall consider the evidence and all reasonable inferences in the light most favorable to Silvas. *Hendricks v. Simper,* 24 Ariz.App. 415, 539 P.2d 529 (1975).

Speros was the general contractor for the construction of a gymnasium at San Manuel Junior High School and at the time of the

accident was in control of the premises, or at the very least in control of the roof where the accident occurred. Speros subcontracted with Guy Apple for the construction of the gymnasium walls. This construction was done in two phases. First the walls were constructed to a point where the roof could be installed. After the roof was installed Guy Apple returned to the job to complete the installation of a parapet. Silvas was an employee of Guy Apple.

After completing the walls under stage one, Guy Apple temporarily left the job and the roofing contractor, Tanner Construction Company, installed a pre-fabricated roof. Tanner left approximately 30 to 40 holes in the roof, designed to accommodate air conditioning units and ducts, which were to be installed by a separate subcontractor. Some of the holes were large, 4' × 4', and others were smaller, 2' × 2'.

While Tanner was installing the roof, Cecil McKee, Speros' superintendent, recognized that the holes if left uncovered would present a hazard to individuals subsequently working on the roof. McKee and Ed Bishop, the Tanner foreman, agreed that if Speros would provide plywood, Tanner's employees would use it to cover the holes. Bishop delegated the responsibility of covering the holes to two Tanner employees. They were supposed to do this as the prefab roof was placed in position. However, once Tanner had set the roof, Bishop did not return to make sure the holes were covered. After Tanner left, McKee was on the roof once but did not closely examine it.

Guy Apple returned to the construction site to complete the parapet four or five days after Tanner had installed the roof and left the job site. A few of the holes were covered but most were not. The foreman for Guy Apple told the employees to be very careful about the holes in the roof. Appellant himself knew the holes were there and that they were not covered. He and the other employees of Guy Apple working on the roof knew that the holes were dangerous and placed mortar boards over some of the holes.

Appellant was employed as a mason's helper. His job was to transport bricks and mortar from a mixing site on the roof to Guy Apple's bricklayers. He transported these materials in a wheelbarrow that, when loaded, weighed as much as 200 lbs. Appellant noticed that when the wheelbarrow was loaded his ability to see the open holes was impaired. However, he did not complain about the danger or refuse to work, because he was afraid of losing his job. On the day of the accident, two days after returning to complete phase two of the wall, appellant was pushing a loaded wheelbarrow. Just before the accident he saw an uncovered hole to his left and pushed his wheelbarrow to the right to avoid it. The wheelbarrow obstructed his vision to the right and he stepped into another uncovered hole on his right that he had not seen. Speros knew the employees of Guy Apple would be working on the roof and that wheelbarrows would be used to transport building materials back and forth across the roof.

As a result of the fall, Silvas sustained personal injuries and has been unable to return to his job as a mason's helper.

Subsequent to the injury, Speros' employees covered the holes with sheets of plywood and nailed the plywood to the roof, and put a barricade around the hole that was used for access to the roof.

■ The general contractor in control of premises has certain duties to the employees of a subcontractor that are usually likened to those of a possessor of land to invitees. *Fluor Corporation, Ltd. v. Sykes*, 3 Ariz.App. 559, 416 P.2d 610 (1966); *Pruett v. Precision Plumbing, Inc.*, 27 Ariz.App. 288, 554 P.2d 655 (1976); *Hall v. Moveable Offshore, Inc.*, 455 F.2d 633 (5th Cir. 1972). Thus, Speros owed to Guy Apple employees the duty to keep the joint working spaces reasonably safe. *Allison Steel Manufacturing Co. v. Superior Court*, 22 Ariz.App. 76, 523 P.2d 803 (1974). The duty owed to invitees by the possessors of land is set forth in Restatement (Second) of Torts, Sec. 343 (1965):

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

█ It is appellee's position that Silvas knew of the holes and appreciated their danger and it had no reason to believe that Silvas would not protect himself against the danger therefore it is relieved of any liability. We do not agree. The fact that the injured party knew and appreciated the danger is not conclusive. Restatement (Second) of Torts, Sec. 343A reads as follows:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. * * * "

Comment *f* to the above Restatement section reads as follows:

"There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. . . ."

The foregoing concept is also discussed by W. Prosser, The Law of Torts Sec. 61, at 394–95 (4th ed. 1971):

"In any case where the occupier, as a reasonable man, should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, where there is reason to expect that the invitee's attention will be distracted, as by goods on display, or that after lapse of time he may forget the existence of the condition, even though he has discovered it or been warned; . . . In all such cases the jury may be permitted to find that obviousness, warning or even knowledge is not enough."[1] (footnotes omitted)

The facts show that the existence of one of these holes on the roof distracted Silvas from detecting the hole through which he fell. The wheelbarrow blocking his view also contributed to his failure to avoid the hole. Considering the number of holes in the roof, the fact that Speros knew they were hazardous if left uncovered, and the fact that Speros knew that Apple's employees would be going back and forth on the roof with wheelbarrows, a jury question was presented as to whether Speros should have anticipated the harm despite Silvas' knowledge and should have taken steps to either cover or barricade the holes. The trial court erred in not submitting the case to the jury.

Reversed.

RICHMOND, C. J., and HATHAWAY, J., concur.

1. See Annot. 35 A.L.R.3d 230 (1971), "Modern Status of the Rule Absolving a Possessor of Land of Liability to Those Coming Thereon for Harm Caused by Dangerous Physical Conditions of Which the Injured Party Knew and Realized the Risk."