778 P.2d 1312

**Dennis M. DURNIN,**
**Plaintiff–Appellant,**

v.

**KARBER AIR CONDITIONING CO.,**
**Defendant–Appellee.**

**No. 1 CA–CIV 9824.**

Court of Appeals of Arizona,
Division 1, Department B.

March 7, 1989.
Review Denied Sept. 19, 1989.

Jack Levine, P.C. by Jack Levine, Phoenix, for plaintiff-appellant.

Burch & Cracchiolo by Brian Kaven and Daryl Manhart, Phoenix, for defendant-appellee.

## OPINION

EUBANK, Judge.

This is an action for personal injuries incurred on a construction project. The appellant, Dennis Durnin (Durnin), was an employee of the masonry subcontractor and was injured when he fell through an opening in the roof. The primary issue on appeal is whether the trial court properly instructed the jury that a contractor has a duty to keep the premises under its control reasonably safe for the employees of other subcontractors. We hold that the jury was properly instructed and affirm the judgment.

## BACKGROUND

The Whitney Company (Whitney) was the general contractor on the construction of the Edison Elementary School. It contracted with a number of subcontractors and material suppliers, including Karber Air Conditioning Co. (Karber), which was

the air-conditioning subcontractor, Thunderbird Masonry, Inc. (Thunderbird), which was the masonry subcontractor employing Durnin, and Tanner Prestress Companies (Tanner), which supplied the pre-cast concrete roof for the Industrial Arts Building at the school.

On the day of Durnin's accident, Thunderbird was building parapet walls on the edge of the roof. The roof supplied by Tanner included a series of 4' × 5' openings for the installation of Karber's air-conditioning ducts. There was evidence that Whitney's employees had covered the roof openings by placing 4' × 8' × ⅜" plywood boards over the openings and nailing the boards to the concrete roof; there was also evidence that Karber's employees had been working with the openings; and there was evidence of an industry custom that these openings were within Karber's realm of responsibility. Durnin was assigned to clean up the construction debris on the roof after the block was laid for each wall. Durnin fell through one of the roof openings. He remembers the roof opening through which he fell, but remembers nothing else about the accident. There were no witnesses to Durnin's accident.

Durnin sued Karber alleging that Karber was negligent in failing to secure the roof covers.[1] In Durnin's first trial, the jury found in favor of Karber. Following an appeal in 1 CA–CIV 7594, our court reversed, holding that the trial court erred in admitting certain evidence, and we remanded the case for a new trial.

In Durnin's second trial, which is the subject of the instant appeal, the trial court instructed the jury that the general contractor had a duty to provide a reasonably safe workplace and that a subcontractor had a duty to do its work in a reasonably safe manner. The specific instruction reads:

A general contractor has a duty to provide a reasonably safe work site for the employees of subcontractors.

1. He also sued some of the other participants in the construction. The general contractor settled with Durnin for $625,000 and the other participants were dismissed from Durnin's suit.

The general contractor has a duty to provide a reasonably safe work site which is jointly used by different subcontractors.

The duty to provide a reasonably safe work site may include a duty:

a. to inspect the work site so as to discover any conditions that may pose a danger to such employees;

b. to warn such employees of the existence of dangers which could not reasonably be expected to be apparent or obvious;

c. to exercise reasonable care under all of the circumstances existing at the time.

A subcontractor has a duty to do its part of the work in a reasonably safe manner and remains responsible until its part of the work is completed.

Both a general contractor and a subcontractor may assume specific safety responsibilities by contract. In this case, in its subcontract with Whitney, defendant Karber assumed safety responsibility for its work to be performed under the contract, and to protect and be responsible for its work until completed. Karber was required, therefore, to exercise reasonable care in the discharge of these duties and obligations undertaken by contract.

Durnin had requested that this instruction be modified to provide that "a general contractor *or subcontractor* . . . has a duty to keep such work area reasonably safe. . . ." (Requested Instruction No. 26). Durnin also had requested that the jury be instructed that a contractor in possession and control of a portion of a construction site had a duty to keep the premises reasonably safe for other contractors' employees. This Requested Instruction No. 13 reads:

Duty of Possessor of Premises

The law places upon a contractor in possession and control of a construction site, or a portion thereof, the duty to use reasonable care to make and keep such premises under its possession and control, reasonably safe for employees of other contractors entitled to use such premises for performing their work. The duty to keep such premises reasonably safe may include a duty:

1. to inspect the premises so as to discover any conditions that may pose a danger to such employees,

2. to warn such employees of the existence of dangers which could not reasonably be expected to be apparent or obvious, and

3. to provide said employees with such protection from foreseeable hazards as may be required by the provisions of any contract undertaken by said contractor or by the exercise of reasonable care under all of the circumstances existing at the time.

It was Durnin's theory that Karber had full or at least partial possession and control over the openings, the coverings placed over the openings, and the "area immediately surrounding the roof openings."

In refusing to make Durnin's modification and to give Durnin's instruction, the trial court stated that only the general contractor owed such a duty and that one subcontractor did not invite another subcontractor onto the premises. The court specifically stated:

Let me just say for the record I said I would not give the instructions you [appellant] requested in that regard, ones that are perhaps demonstrated by your requested 13(A) and your requested 13 because it is my belief that possession in control principle applies to the general contractor, not the sub's possession. It is the general contractor who stands in the shoes of the owner of the property, and it is the general contractor who invites upon the premises the subcontractors.

One sub does not, especially under the facts of this case, and especially in light of no contractual provision to the contrary, one sub does not invite another sub onto any premises. Mr. Durnin certainly is not an invitee of Karber on the scene where this accident took place. He was an invitee of the general contractor or the owner, and all of the possession and control cases deal with the invitee

tort theory, and that is why I am not giving it.

Following the trial, the jury in Durnin's second trial found in favor of Karber.

## DISCUSSION

Durnin argues on appeal that the trial court erred in instructing the jury. He contends that the court should have given the appellant's requested jury instructions 13 and 26, which would have permitted the jury to find *either* the general contractor Whitney or the appellee, as subcontractor, to be in possession and control of the premises and therefore liable. His objection concerning the jury instructions was that the court's instruction totally fails to tell the jury what law applies when a subcontractor fails to provide a reasonably safe work space, which is jointly used, for the protection of other subcontractors and their employees.

■ The standards for testing jury instructions are well known. The following are applicable in this appeal: Where a requested instruction is partly correct and partly incorrect, it is not the duty of the trial court to "separate the sheep from the goats", and the court may reject the entire instruction. *Public Service Co. v. Bleak*, 134 Ariz. 311, 656 P.2d 600 (1982); *Powell v. Langford*, 58 Ariz. 281, 119 P.2d 230 (1941). Further, the trial court is required to refuse instructions which do not correctly state the law. The test of the propriety of giving an offered instruction is whether or not the jury would be misled as to the proper rule of law. *Evans v. Pickett*, 102 Ariz. 393, 430 P.2d 413 (1967). On review, jury instructions are read as a whole, with an eye toward determining whether or not the jury has been given the proper rules of law to apply in arriving at its decision. *Catchings v. City of Glendale*, 154 Ariz. 420, 743 P.2d 400 (App.1987). A jury verdict will not be overturned because of the jury instructions that were given unless there is a substantial doubt as to whether or not the jury was properly guided in its deliberations. *Petefish By and Through Clancy v. Dawe*, 137 Ariz. 570, 672 P.2d 914 (1983).

In reviewing the Instructions given by the trial court, we have no doubt that the jury in this case was properly instructed. Durnin's instructions asserted an improper basis for the claimed liability against Karber.

■ In Arizona, premises liability has not been extended to include subcontractor liability for his discrete working area where the entire premises is in the control or possession of the general or prime contractor. The general contractor in control of the premises has certain duties to the employees of a subcontractor that are usually likened to those of a possessor of land to invitees. One of these duties is to keep joint working spaces reasonably safe. *Silvas v. Speros Construction Co.*, 122 Ariz. 333, 594 P.2d 1029 (App.1979). *See also Pruett v. Precision Plumbing, Inc.*, 27 Ariz.App. 288, 554 P.2d 655 (1976); *Fluor Corp. v. Sykes*, 3 Ariz.App. 211, 413 P.2d 270 (1966). Each subcontractor is generally responsible for the safe operation of its part of the work. *Pruett v. Precision Plumbing, Inc.*, 27 Ariz.App. 288, 293, 554 P.2d 655, 660 (1976). The instruction given by the trial court included these elements of law.

■ Furthermore, Arizona law has not embraced the theory of segregating a construction site into separate premises according to the work of the various subcontractors and extending liability to each as possessor of the premises in which their work is accomplished. Durnin's proposed instructions would have created zones of premises liability according to the work of the various subcontractors. This result does not accord with Arizona law, and the proposed instructions were properly rejected by the trial court on this basis. *See Silvas v. Speros Construction Co., supra.* Since the instructions given by the trial court adequately explained the duties of a general contractor and subcontractor to appellant, they did not mislead the jury in their deliberations.

Another reason for rejecting a balkanization of premises liability is that only the general contractor is in a position to control

**420**

access to the site and also invitee status, and only he can have a comprehensively implementable overall concern for safety on the construction premises. The concepts and realities of "possession and control" are not easily understood when they are attempted to be exercised on a dual or joint basis. Nor are people adept at drawing such fine lines in such a fluid and dynamic situation, and short of a clear relinquishment or abandonment of a discrete work space, not suggested here, full responsibility for *premises liability* should remain with the general contractor.

We hold that the jury instructions actually given by the court adequately explained the duties of the general contractor and Karber's duty as a subcontractor to appellant.

THE JUDGMENT IS AFFIRMED.

CONTRERAS, P.J., and DAVIS, J. Pro Tem., concur.

NOTE: The Honorable Richard M. Davis, a judge pro tempore of a court of record has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 31; A.R.S. 12–145; 12–146; 12–147.