897 P.2d 667

**Anthony D. TERRY, Jr.,
Plaintiff/Appellee/Counterdefendant,**

**v.**

**GASLIGHT SQUARE ASSOCIATES,
Defendant/Appellant/Counterclaimant.**

**No. 2 CA–CV 94–0139.**

Court of Appeals of Arizona,
Division 2, Department B.

Nov. 17, 1994.

Review Denied June 29, 1995.*

---

* Feldman, C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Malcom K. Ryder and Anthony D. Terry, Sr., Tucson, for plaintiff/appellee/counterdefendant.

Molloy, Jones & Donahue, P.C. by William W. Pearson and Dale F. Regelman, Tucson, for defendant/appellant/counterclaimant.

## OPINION

HATHAWAY, Judge.

This is an appeal by Gaslight Square Associates (GSA) from a jury verdict in favor of Anthony D. Terry, Jr. (Terry) in a case arising out of a lease dispute. We affirm.

Terry is the president and majority shareholder of the corporation which operates the Gaslight Theater in Tucson. The theater was previously located in what was known as Gaslight Square on Tanque Verde Road. Terry negotiated his first lease at the Tanque Verde location in 1979 with the Gillespie partnership, (Gillespie), the previous property owners, and executed a new lease superseding the original lease in 1984 (jointly, the original lease). The dispute in this lawsuit centers on whether Terry is responsible for pass-through payments in the lease for real estate tax and insurance premium increases and for common area maintenance charges incurred during the lease term.

The original lease contained an incremental rent schedule and a tax payment provision that "Lessor shall pay all real property taxes applicable to the Premises, provided, however, that Lessee shall pay, in addition to rent, the amount if any, by which real property taxes applicable to the Premises increase over the year 19___." The base tax year was not filled in on the original lease. Other lease terms concerning insurance premiums and maintenance charges were never enforced by Gillespie. Both Terry and Gillespie testified that, as lessee and lessor, neither party intended to enforce the separate pass-throughs for tax and insurance increases or for maintenance charges. They also testified that the fixed monthly rent provided in the lease increased at specified levels during the lease term to compensate for these expenses. Gillespie never attempted to collect pass-through expenses from Terry during the five years she was his landlord. Terry testified that because his business operated on a very tight budget, the knowledge that his monthly rental costs would not exceed the figures provided in the lease was a primary inducement for entering into the lease. Terry testified, "I needed to have a bottom-line figure that I knew that I was paying every month."

In February 1985, GSA purchased Gaslight Square from Gillespie. As a part of that purchase, GSA assumed all Gaslight Square leases, including the original lease negotiated between Terry and Gillespie. During the purchase period, GSA had the opportunity to review the business records for the property, which showed that Terry had never paid or been asked to pay for additional pass-through expenses. GSA never questioned Gillespie about this issue.

GSA did not request pass-through payments from Terry until one year after purchase of the premises. In February 1986, GSA sent Terry a bill for $13,095.78 for overdue pass-through payments. Terry testified that GSA threatened to evict him if he didn't pay the bill. He further testified that he could not readily relocate his business, in light of the unique nature of the space it required. He ultimately began to pay the monies demanded by GSA in order to keep his business alive. The parties dispute whether Terry paid these monies under protest. Terry did not indicate in writing that the payments were involuntary until April 1990, when he began to note on the checks that the payments were made under protest. However, Terry testified that GSA was aware of his position based upon the correspondence and conversations he had with GSA both prior to the first payment and for the duration of all of the payments.

In addition to the original lease now in dispute, Terry and GSA entered into two subsequent leases for additional space on the premises (the second and third leases), to terminate in June 1992, along with the original lease. GSA and Terry negotiated both of these leases and both contained a specific year in the blank space for the base tax year, which was absent in the original lease. We will thus focus only on the original lease.

Terry filed suit against GSA for $107,000 in damages incurred on the original lease and then vacated the premises in March 1991, prior to the June 1992 lease termination date.

GSA counterclaimed against Terry for breach of the second and third leases. The jury apparently found in favor of GSA on the second and third leases, and in favor of Terry on the original lease.[1] The verdict in favor of Terry in the amount of $80,881 reflects an offset of these findings. GSA filed two motions for directed verdict, both of which were denied. The trial court awarded Terry attorney's fees and costs in the amount of $53,-900.55.[2] The trial court denied GSA's subsequent motion for judgment NOV or for new trial and this appeal followed. GSA has set forth numerous arguments on appeal, none of which has merit.

## STANDARD OF REVIEW

■ We will review the relevant lease provisions *de novo*, as they present questions of law. *Hadley v. Southwest Properties, Inc.*, 116 Ariz. 503, 570 P.2d 190 (1977). The initial determination whether a lease provision is ambiguous, and subject to interpretation through the use of parol evidence is a question of law. *Cecil Lawter Real Estate School, Inc. v. Town and Country Shopping Center Co., Ltd.*, 143 Ariz. 527, 694 P.2d 815 (App.1984). We view the evidence and the reasonable inferences therefrom in the light most favorable to the prevailing party, and if there is any evidence to support the trial court's judgment, we affirm. *Triangle Const. v. City of Phoenix*, 149 Ariz. 486, 720 P.2d 87 (App.1985).

■ Many of GSA's claims focus on allegedly erroneous jury instructions. As to those issues, we determine whether the jury would be misled as to the proper rule of law by the offered instructions. *Durnin v. Karber Air Conditioning Co.*, 161 Ariz. 416, 778 P.2d 1312 (App.1989). On review, "jury instructions are read as a whole, with an eye toward determining whether or not the jury has been given the proper rules of law to apply in arriving at its decision." *Durnin*, 161 Ariz. at 419, 778 P.2d at 1315. Absent substantial doubt whether the jury was properly guided in its deliberations, we will not overturn a jury verdict because of jury instructions. *Durnin*.

## GSA'S ARGUMENTS

GSA argues that the jury verdict was incorrect, primarily because the trial judge improperly instructed the jury on many issues. The trial court denied GAS's request that the following instructions be given:

> Instruction Number 15: A person who is mentally and legally competent is presumed to know the contents of an agreement he signs.

> Instruction Number 16: A party is bound by a written agreement that she signs even if she later claims not to have read the agreement before signing.

GSA contends that because the court refused these instructions and told the jury that Terry could avoid terms of the lease if he showed that he signed it before reading it, reversible error resulted. GSA argues that the court incorrectly implied to the jury that the leases were contracts of adhesion, and that only adhesion contracts are excepted from the traditional duty to read. This argument does not follow under the facts presented, as the jury found in favor of GSA regarding leases 2 and 3, and obviously did not have this understanding as to all three of the leases. The jury instructions, reviewed as a whole, do not give rise to the argument that the contracts were adhesion contracts. *Durnin*.

---

1. Even though the verdict does not specify how the jury arrived at its decision, we will presume that it found in favor of Terry on the original lease and in favor of GSA on leases two and three. The jury asked the judge, "[i]f we find for the plaintiff on lease # 1 and for the defendant on lease[s] 2 & 3, do we fill out both forms with the appropriate awards, or just 1 form with the net award?" and "[i]s the Breach of Contract determined by all three leases as a whole—or can each lease be seperately [sic] judged for Breach of Contract?" The judge replied that one form should be used and that each lease could be separately judged for breach of contract. The correlation between the net award and the damages claimed for each lease supports this conclusion.

2. We note that the total attorney's fees and costs should be $53,800.55 instead of $53,900.55 as inserted by the trial court on the September 14, 1994, judgment.

GSA also incorrectly focuses on the duty to read, rather than on the parties' intentions. The original lease, the only lease upon which Terry prevailed at trial, contained a blank space where the base tax year should have been inserted. This created an ambiguity in the lease, permitting the admission of parol evidence for its interpretation. *Cecil Lawter.* Terry and Gillespie presented credible testimony that their intentions were that Terry was not liable for the tax, insurance and maintenance expenses. Their undisputed behavior supported this testimony.

The court may likewise consider parol evidence to interpret an ambiguous document in the context of a commercial lease. *Cecil Lawter.* This is contrary to the "rigid duty to read" position GSA advocates. As the Supreme Court stated in *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 395, 682 P.2d 388, 400 (1984), "[t]he standard boilerplate definition of the ... [exclusion] was not bargained for, not written by and not read by the parties. It need not be allowed to 'undercut the dickered deal.'" The dickered deal between Terry and Gillespie was that Terry was not responsible for pass-through expenses, as evidenced by the testimony and actions of the parties to the original lease.

GSA argues that Terry's sole remedy, as a tenant, was to file an action for damages, and that he had no right to an early termination of the lease. This position is based on the rule of independent covenants, under which covenants in a lease are independent unless expressly made dependent. Under this rule, a breach by one party gives rise only to a suit for damages and does not excuse performance by the other party. *Thompson v. Harris*, 9 Ariz.App. 341, 452 P.2d 122 (1969). GSA strongly relies on *Thompson* for this argument. However, the *Thompson* decision turned on the appellate court's ruling that the landlord did not breach any of the lease covenants, therefore the tenant was in breach of his covenant to pay rent "even if we were to conclude that the covenant to pay rent was dependent upon some covenant of the landlord under the terms of the lease." *Thompson*, 9 Ariz.App. at 346, 452 P.2d at 127. The court, however, never reached the dependency issue because of the absence of a breach by the landlord in that case.

The instant case is distinguishable, as the jury determined that there was a breach of the original lease by the landlord. Terry argues, and we agree, that the Restatement (Second) of Property, (Landlord and Tenant) § 7.1 (1977) allows early termination of the lease based on GSA's breach of the original lease terms. § 7.1, Nonperformance of Landlord's Promise—Remedies Available, states that

> except to the extent the parties to a lease validly agree otherwise, if the landlord fails to perform a valid promise contained in the lease to do, or to refrain from doing, something on the leased property or elsewhere, and as a consequence thereof, the tenant is deprived of a significant inducement to the making of the lease, and if the landlord does not perform his promise within a reasonable period of time after being requested to do so, the tenant may:
>
> (1) terminate the lease ... and recover damages....

There was evidence that a significant inducement to Terry's entering into the original lease was that he would know exactly what his monthly lease expenses were to be for the duration of the lease. GSA breached the lease by demanding payment of monies not anticipated by the original parties to the lease, as determined by the jury. The presence of the significant inducement argument distinguishes this case from *Thompson.* See also *Bolon v. Pennington*, 6 Ariz.App. 308, 432 P.2d 274 (1967). GSA suggests that the Restatement rule only applies to the physical conditions on the property. We do not interpret that rule so narrowly. Terry was thus permitted to terminate the original lease, pursuant to the Restatement rule.

The Restatement rule adopts a dependence of covenants rule, and applies in the absence of Arizona law to the contrary. *Cannon v. Dunn*, 145 Ariz. 115, 700 P.2d 502 (App.1985). There is no Arizona law we are aware of precisely addressing these circumstances, where the performance of the promise at issue is a significant inducement to the

**370**

making of the lease by the tenant. We therefore adopt the Restatement rule under the facts of this case. In light of our adoption of Restatement § 7.1, we need not address GSA's argument with respect to Terry's instructions 4, 28 and 29.

 GSA also argues that the court erred in failing to instruct the jury on the scope of the implied covenant of good faith and fair dealing as set forth in defendant's requested instruction number 9.

> Instruction Number 9: Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. In addition, the duty of good faith and fair dealing is violated by evasion of the spirit of the contract, lack of diligence, conjuring up pretended disputes, asserting an interpretation of the agreement that is contrary to one's own understanding of its meaning, or falsification of facts.

As asserted by Terry, the court gave other instructions which adequately covered this issue. In addition, instruction number 9, as offered, constituted an improper comment on the evidence, and was correctly rejected. Where the offered instruction is partly correct and partly incorrect, the court need not revise it, and may reject the entire instruction. *Durnin.*

 GSA contends that the court erred in failing to provide an estoppel instruction. As argued by Terry, GSA failed to provide evidence of detrimental reliance, a necessary element of estoppel. *Heltzel v. Mecham Pontiac,* 152 Ariz. 58, 730 P.2d 235 (1986). Similarly, the court did not err in declining to give RAJI instruction number 20, regarding the relevance of the parties' conduct, as this was already covered in other jury instructions. GSA additionally argues that the elements of economic duress/business compulsion were not established by the evidence and that there was no factual basis to warrant plaintiff's instruction number 6 regarding this issue. However, we find adequate evidence relating to this issue was presented at trial. As GSA has not shown that the jury was not properly guided in its deliberations, we will not overturn the jury's verdict. *Durnin.*

Finally, GSA argues that the parties reached an accord concerning resolution of the outstanding $13,000, and that the court should have given instructions that Terry could have possibly avoided the accord, but not the underlying lease. GSA has not shown the existence of an accord and cannot create one by simply employing that term. It appears that the jury, upon hearing the testimony and weighing the evidence, was not persuaded that an accord existed, and breach of an accord is not an issue.

Affirmed. Terry is granted attorney's fees on appeal upon compliance with Ariz.R.Civ. App.P. 21(c), 17B A.R.S.

ESPINOSA, P.J., and DRUKE, C.J., concur.