
IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| ANDREW MULLIN, a married man in his separate capacity, | ) ) ) | |
| | ) | 2 CA-CV 2003-0189 |
| Plaintiff/Appellee, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| BRADFORD T. BROWN, ARTHUR A. CHAPA, RICHARD S. FIELDS, and EDWARD A. LINDEN, | ) ) ) ) | |
| | ) | |
| Defendants/Appellants. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-330235

Honorable Kenneth L. Fields, Judge

AFFIRMED

Law Office of Ethan Steele, P.C.
  By Ethan Steele                                                              Tucson
                                                    Attorney for Plaintiff/Appellee

Chandler & Udall, LLP
  By Edwin M. Gaines, Jr., and Kurt Kroese                                     Tucson
                                              Attorneys for Defendants/Appellants

F L Ó R E Z, Presiding Judge.

¶1         This is a legal malpractice case.  Defendants/appellants, Bradford Brown, Arthur Chapa, Richard Fields, and Edward Linden, admitted they were negligent in having failed to timely file a petition contesting the will and trust of Ralph Mullin, plaintiff Andrew Mullin's grandfather.  The trial court denied appellants' motions for directed verdict, made at the close of Andrew's case and at the close of evidence.  The jury determined that Andrew would have successfully contested the will and trust and awarded him $2,937,125 in damages.[1]  Following the verdict, appellants moved alternatively for a judgment as a matter of law, a new trial, or a remittitur.  Those motions were denied as well, and this appeal followed.

¶2         On appeal, appellants challenge the aforementioned rulings.  We review the denial of a motion for new trial and a motion for remittitur for an abuse of discretion. *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 961 P.2d 449 (1998).  We review de novo the trial court's denial of a motion for judgment as a matter of law, *see Roberson v. Wal-Mart Stores, Inc.*, 202 Ariz. 286, 44 P.3d 164 (App. 2002); however, we view all facts in the light most favorable to Andrew.  *See Hutcherson*.  "[I]f any substantial evidence could lead

---

[1]         [A] plaintiff asserting legal malpractice must prove the existence of a duty, breach of duty, that the defendant's negligence was the actual and proximate cause of injury and . . . damages.  A necessary part of the . . . plaintiff's burden of proof . . . is to establish that "but for the attorney's negligence, he would have been successful in the prosecution . . . of the original suit."

*Glaze v. Larsen*, 207 Ariz. 26, ¶ 12, 83 P.3d 26, 29 (2004), *quoting Phillips v. Clancy*, 152 Ariz. 415, 418, 733 P.2d 300, 303 (App. 1986).

reasonable persons to find the ultimate facts sufficient to support the verdict, we will affirm the judgment." *Gonzales v. City of Phoenix*, 203 Ariz. 152, ¶ 2, 52 P.3d 184, 185 (2002).

**Presumption of Undue Influence**

¶3        Ralph Mullin died on August 3, 1995, leaving the bulk of his estate to Andrew's brother, Chris Jr., under the terms of a will and trust executed on June 10, 1995. In previous wills, Ralph had provided equally for Andrew and Chris Jr. Andrew alleged that the 1995 will and trust were the products of Chris Jr.'s undue influence on Ralph.

¶4        A presumption of undue influence arises when one occupies a confidential relationship with the testator and is active in preparing or procuring the execution of a will in which he or she is a principal beneficiary. *See In re O'Connor's Estate*, 74 Ariz. 248, 246 P.2d 1063 (1952). Appellants concede that at the time Ralph executed the will and trust in 1995, Chris Jr. stood in a confidential relationship with Ralph and that Chris Jr. was the primary beneficiary of the will. But appellants argue that a presumption of undue influence could not have arisen because there was insufficient evidence that Chris Jr. had actively procured the 1995 will. We disagree.

¶5        Evidence was presented from which the jury could have determined that Chris Jr. had instructed Ralph's attorney to draft a new will and trust naming Chris Jr. as the primary beneficiary and that he had communicated with the attorney during the drafting process and suggested and/or dictated terms that were eventually included in the documents. Although appellants presented evidence to the contrary, when viewed in the light most

3

favorable to Andrew, the evidence as a whole and reasonable inferences therefrom support a finding that Chris Jr. had actively procured the execution of the will. *See In re Estate of Harber*, 102 Ariz. 285, 428 P.2d 662 (1967) (collecting cases in which active preparation or procurement of will was found when beneficiary had submitted contents of will to preparer or provided terms to attorney drafting will).

¶6        Appellants present a much closer question in their argument on the effect of the presumption once it arises and whether the trial court correctly instructed the jury on the burden of proving undue influence. They rely on a substantial line of Arizona Supreme Court decisions that have described the presumption of undue influence as one that shifts the burden of production of evidence but not the burden of persuasion. The reasoning is best expressed in *Seiler v. Whiting*, 52 Ariz. 542, 84 P.2d 452 (1938), on which the cases appellants cite relied, and in *In re Westfall's Estate*, 74 Ariz. 181, 245 P.2d 951 (1952).

¶7        In *Seiler*, the court discussed presumptions in general, stating:

> There has been much erroneous thinking and more loose language in regard to presumptions. We read of presumptions of law and presumptions of fact, of conclusive presumptions and of disputable presumptions. In truth there is but one type of presumption in the strict legal meaning of the word, and that is merely a general rule of law that under some circumstances, *in the absence of any evidence to the contrary*, a jury is compelled to reach a certain conclusion of fact. . . . [W]henever evidence contradicting the presumption is offered the latter disappears entirely, and the triers of fact are bound to follow the usual rules of evidence in reaching their ultimate conclusion of fact. . . .

"A presumption is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue. . . . [A] presumption should never be placed in the scale to be weighed as evidence."

52 Ariz. at 548-49, 84 P.2d at 454-55, *quoting Peters v. Lohr*, 124 N.W. 853, 855 (S.D. 1910). In *Westfall's Estate*, the court applied this theory of presumptions to a will contest, stating: "A presumption, in the strict legal meaning of the word, is a rule of law that in the absence of any evidence to the contrary the trier of fact is compelled to reach." 74 Ariz. at 186, 245 P.2d at 955.

¶8        The supreme court also applied this view of the presumption of undue influence in subsequent cases. *Estate of Harber* (recognizing that presumption shifts only burden of production and not burden of persuasion); *In re Estate of Pitt*, 88 Ariz. 312, 317, 356 P.2d 408, 411 (1960) (legal presumption of undue influence "'dissolved'" on denial by one presumed to have exerted undue influence "'even if neither the judge nor the jury believed the denial to be true'"), *quoting O'Connor's Estate*, 74 Ariz. at 260, 246 P.2d at 1071. *But see In re Estate of McCauley*, 101 Ariz. 8, 11, 415 P.2d 431, 434 (1966) ("[M]arital relationship existing between testatrix and proponent is not one of the confidential relationships giving rise to the presumption of undue influence. Accordingly, . . . the burden of proving undue influence remained with the contestants.") (citations omitted).

5

¶9      If this authority were controlling, once appellants produced any evidence that Chris Jr. had not exerted any undue influence, no matter how credible, the presumption disappeared, and the jury should have been instructed that Andrew had the burden of proving undue influence by clear and convincing evidence. The trial court instead relied on the supreme court's more recent decision in *In re Estate of Shumway*, 198 Ariz. 323, 9 P.3d 1062 (2000), and instructed the jury as follows:

> If Chris Mullin Jr. and/or Dr. David Mullon had a confidential relationship with Ralph Mullin; was/were active in procuring the execution of the 1995 will; and was/were a principal beneficiary under its terms, then the 1995 will is presumptively invalid and the defendants must prove by clear and convincing evidence that Chris Mullin Jr. and/or Dr. David Mullon did not unduly influence Ralph Mullin.

¶10      "We review challenged jury instructions to determine whether the trial court gave the jury 'the proper rules of law to apply in arriving at its decision.'" *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, ¶ 68, 92 P.3d 882, 900 (App. 2004), *quoting Durnin v. Karber Air Conditioning Co.*, 161 Ariz. 416, 419, 778 P.2d 1312, 1315 (App. 1989). In *Estate of Shumway*, the testator's assistant, Rodriguez, prepared the will and received twenty-five percent of the estate. The will included a penalty clause requiring beneficiaries to forfeit their share of the estate if they challenged the will. Section 14-2517, A.R.S., invalidates a penalty clause when there is probable cause to challenge a will. Shumway's daughters challenged the will on the ground of undue influence. After a bench trial, the trial court found the will valid and enforced the penalty clause. Division One of this court

6

affirmed the judgment, concluding (1) that the trial court had not abused its discretion in finding Rodriguez had met her burden of proving, by clear and convincing evidence, that she had not exerted undue influence over Shumway, and (2) that the contestants had lacked probable cause to challenge the will. *In re Estate of Shumway*, 197 Ariz. 57, 3 P.3d 977 (App. 1999), *vacated in part*, 198 Ariz. 323, 9 P.3d 1062 (2000).

¶11 The supreme court granted review on a single issue: whether the legal presumption of undue influence, which had arisen because of Rodriguez's confidential relationship with the testator, her participation in creating the will, and her status as beneficiary, was sufficient to establish probable cause to challenge the will. The court concluded it was and based its conclusion, in part, on what it called Rodriguez's burden of proof. The court explained the effect of the presumption of undue influence, stating: "'[W]here a confidential relationship is shown the presumption of invalidity can be overcome only by clear and convincing evidence that the transaction was fair and voluntary.'" *Id*. ¶ 16 (alteration in *Shumway*), *quoting Stewart v. Woodruff*, 19 Ariz. App. 190, 194, 505 P.2d 1081, 1085 (1973). The court noted that "[t]his is a difficult standard of proof . . . [t]hough Rodriguez met it to the trial judge's satisfaction after presentation of all evidence." *Id*. The supreme court did not criticize the trial court's conclusion that "Rodriguez [had] proved by clear and convincing evidence that she had not exerted undue influence" on Shumway, *id*. ¶ 3, and it did not vacate or disapprove the statement in Division One's decision that Rodriguez had met her "burden of showing by clear and

7

convincing evidence that she did not unduly influence the decedent." *Shumway*, 197 Ariz. 57, ¶ 22, 3 P.3d at 984.

**¶12**        Appellants argue the supreme court's suggestion in *Shumway* that the presumption of undue influence had shifted the burden of persuasion to the proponent of the will is merely a product of loose language. They argue we should ignore the import of the language as mere dictum because the only issue on review was the statutory question of whether probable cause had existed to challenge the will pursuant to § 14-2517.

**¶13**        In contrast, Andrew contends *Shumway* signals a shift in the court's interpretation of the effect of the presumption from the minority rule in favor of the majority rule—that this type of presumption affects the burden of proof and not just the burden of production. *See O'Connor's Estate* (recognizing Arizona does not follow majority rule that effect of presumption of undue influence is to shift burden of persuasion to proponent of will); *Estate of Pitt* (same); *see also In re Last Will and Testament of Melson*, 711 A.2d 783 (Del. 1998). He offers compelling policy reasons for shifting the burden of proof in circumstances sufficient to raise the presumption, including access to evidence. He acknowledges, however, that there are competing policy considerations and that the choice between them is an issue more appropriately addressed by the supreme court or the legislature.

**¶14**        Generally, when our supreme court substantially changes the law in a particular area, it does so explicitly by acknowledging the change and thoroughly explaining

its reasons therefor. *See, e.g., Derendal v. Griffith*, 209 Ariz. 416, ¶ 32, 104 P.3d 147, 155 (2005) (overruling *Rothweiler v. Superior Court*, 100 Ariz. 37, 410 P.2d 479 (1966), regarding "use of the 'moral quality' prong of [test] to determine whether one charged with a misdemeanor criminal offense is entitled to trial by jury"); *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983) (abolishing common law rule of nonliability for tavern owners for accidents caused by intoxicated patrons); *Reed v. Hinderland*, 135 Ariz. 213, 219, 660 P.3d 464, 470 (1983) (holding that "the mere presence of the owner in an automobile driven by another does not create any presumption of a master-servant relationship or joint enterprise," overruling *Silva v. Traver*, 63 Ariz. 364, 162 P.2d 615 (1945)). That the court did not do so in *Shumway*, however, neither lessens the precedential authority of the case nor permits this court to ignore it. *See State v. Smyers*, 207 Ariz. 314, n.4, 86 P.3d 370, 374 n.4 (2004) ("The courts of this state are bound by the decisions of [the Arizona Supreme Court] and do not have the authority to modify or disregard th[at] court's rulings."); *In re Marriage of Thorlin*, 155 Ariz. 357, 362, 746 P.2d 929, 934 (App. 1987) ("This court may not disregard a clear holding of our supreme court on the purported ground that the analysis supporting it is . . . incomplete."); *see also Doubek v. Greco*, 7 Ariz. App. 102, 436 P.2d 494 (1968).

¶15 Furthermore, we do not consider the relevant language in *Shumway* to be mere dictum. It is more than "a remark by the way." *Black's Law Dictionary* 454 (6th ed. 1990); *see also Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 81, 638 P.2d 1324, 1327

9

(1981) (Dictum "is a court's statement on a question not necessarily involved in the case."). Rather, that the proponent of the will had the burden of proof at trial was integral to the court's determination that probable cause to challenge the will existed. The court concluded that the contestants could reasonably have believed they would prevail in a will contest, at least in part because the proponent of the will would have had the difficult burden of proving by clear and convincing evidence that she had not unduly influenced the testator.

¶16 Moreover, the court weighed the presumption and the facts of the case in determining whether probable cause had existed. Under the pre-*Shumway* cases cited above, such weighing would have been inappropriate. *See Seiler*. Therefore, although the court only addressed the effect of the presumption on determining the existence of probable cause, a determination that is made in reference to a time before trial, and hence, before a burden of production could have disappeared, the burden-of-proof-shifting nature of the presumption was essential to the court's reasoning in deciding the issue. That the court could have arrived at the same conclusion by applying different reasoning does not make the court's statements about the reasoning it did apply to the very issue before it merely dictum.

¶17 We are not free to disregard the clear import of the supreme court's language in *Shumway*—that the presumption of undue influence, once it arises, shifts the burden of persuasion to the proponent of a will. If the court did not mean for the language in *Shumway* to apply to other will-contest cases such as this, or to implicitly overrule

10

*Westfall's Estate* and the other prior cases, *see* ¶¶ 7-8, *supra*, it obviously can clarify its intent.[2] But absent any indication that the pertinent language in *Shumway* was limited to its facts or otherwise mere dictum, we conclude that the trial court did not err by instructing the jury pursuant to the language in *Shumway*.

## Sufficiency of the Evidence

¶18 Having found no error in the court's instruction on the presumption and the burden of proof, we also conclude that the evidence supports the jury's verdict on the issue of undue influence. The jury was instructed on the factors our supreme court has identified as tending to establish undue influence. As the court has stated:

> In determining whether a contestant has established that a will has been procured through undue influence, certain factors have been treated as significant indicia of the presence or absence of such influence. These factors include the following: Whether the alleged influencer has made fraudulent representations to the testat[or]; whether the execution of the will was the product of hasty action; whether the execution of the will was concealed from others; whether the person benefited by the will was active in securing its drafting and execution; whether the will as drawn was consistent or inconsistent with prior declarations and plannings of the testat[or]; whether the will was reasonable rather than unnatural in view of the testat[or's] circumstances, attitudes and family; whether the testat[or] was a person susceptible to undue

[2]We note that the court in *Shumway* cited *Estate of Harber* without expressing any disapproval when it said the contestants' attorney had advised them that "one who occupies a confidential relationship to the decedent is active in procuring the execution of the will and is one of the principal beneficiaries." 198 Ariz. 323, ¶ 15, 9 P.3d at 1067. The court did not, however, cite *Estate of Harber* or any of the other cases applying the reasoning in *Seiler* when it described the effect of the presumption on the burden of proof.

11

influence; and whether the testat[or] and the beneficiary have been in a confidential relationship.

*Estate of McCauley*, 101 Ariz. at 10-11, 415 P.2d at 433-34. Appellants concede that Chris Jr. was in a confidential relationship with Ralph and benefitted from the will. And as we stated above, sufficient evidence was introduced from which the jury could have determined that Chris Jr. had actively participated in the drafting of the will and trust by telling the attorney the provisions to include. Sufficient evidence was also presented from which the jury could have found all but one of the remaining factors.

¶19 Andrew testified that he had been close to his grandfather, and it was uncontested that Ralph's prior wills had provided equally for Andrew and Chris Jr. This evidence supports an inference that the will and trust were inconsistent with Ralph's prior declarations and plans and that the will and trust were "unnatural" in view of Ralph's attitude about Andrew. *See id.* at 16, 415 P.2d at 439 (question whether will is "unnatural" requires application of subjective test determining whether will is of type one would expect from the particular testator).

¶20 Andrew also testified that he had not been told his grandfather had been ill until the day Ralph died, just after Ralph had passed away, and that he had not known about the execution of the will and trust. The jury could have determined from that testimony that the execution of the will and trust had been concealed from Andrew, who was obviously an interested party.

12

¶21    Furthermore, the evidence showed Ralph's attorney had drafted the new will and trust as a "rush job" because Ralph was seriously ill and in the hospital. The attorney drafted the documents substantially changing the distribution of Ralph's estate the same day he was asked to do so. Ralph executed the will the next day. The jury could have determined from that uncontested evidence that the will and trust had been the products of hasty action. Moreover, although Ralph's attorney testified that he had discussed creating a trust and pour-over will with Ralph for several months, he admitted that Ralph had not discussed changing his beneficiaries.

¶22    Andrew's medical expert, Dr. Hochman, testified that Ralph had been in a physically and mentally compromised state during his hospital stay just before and after he had executed the will and trust. He testified that persons in the medical condition Ralph had been in at the time the will and trust were drafted and executed "certainly . . . can be led or misled to do all sorts of things or take all kinds of positions that they don't understand." Thus, Andrew presented sufficient evidence from which the jury could have found that Ralph had been susceptible to undue influence at the time the will and trust were drafted and executed.

¶23    Because there is support in the record for seven of the eight indicia of undue influence, we conclude that sufficient evidence supports the verdict on that theory of liability. We reject appellants' argument that the jury was required to find all eight indicia of undue influence before it could find that Chris Jr. had unduly influenced Ralph. That

13

argument is based on a misreading of *McCauley*. The court did not require that all eight indicia be found to support a finding of undue influence. Rather, the court simply stated that no one indicium is necessarily dispositive and that it is appropriate to consider the combined force of separate indicia in determining whether undue influence existed.

¶24 Appellants also argue that Andrew presented insufficient evidence on the theories of mistake and lack of testamentary capacity. We do not reach these issues because the jury returned a general verdict. We will "uphold a general verdict if evidence on any one count, issue or theory sustains the verdict." *Murcott v. Best Western Int'l, Inc.*, 198 Ariz. 349, ¶ 64, 9 P.3d 1088, 1100 (App. 2000); *see also Reese v. Cradit*, 12 Ariz. App. 233, 469 P.2d 467 (1970).

¶25 In their reply brief, appellants contend they are entitled to a new trial if "any one of the[] theories advanced by Andrew fails as a matter of law." They argue that they had submitted a proposed form of verdict to the trial court that included interrogatories on two of Andrew's theories of liability. Appellants rely on *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 666 P.2d 83 (App. 1983). There, we noted that the defendant "[n]ot having asked for special verdicts . . . will not be heard to challenge the validity of the general verdict, the jury having been presented with ample evidence to sustain the award of damages on at least [one] count." *Id*. at 341-42, 666 P.2d at 86-87. We note that, in *Dunlap*, we placed on defense counsel "the burden of requesting special verdicts after a motion for a directed verdict has been denied." *Id*. at 341, 666 P.2d at 86.

14

¶26	Appellants submitted their proposed verdict form before trial and did not re-urge their request for special interrogatories in light of the court's rulings on their motions for directed verdicts. But, more importantly, appellants did not object to the verdict form the court used. The parties submitted proposed forms of verdict with their proposed jury instructions. The court and the parties settled instructions off the record, but gave the parties the opportunity to make a record of their objections. Although appellants objected to several of the court's instructions, including the instruction on burden of proof, they did not object to the court's form of verdict, nor have they argued on appeal that the court erred by refusing to submit to the jury special interrogatories on liability. Therefore, having found that substantial evidence supports the jury's finding of liability on the theory of undue influence, we do not address other theories of liability.

**Damages**

¶27	Appellants also challenge the jury's damage award. They claim the amount awarded was based, in part, on the value of assets that had been transferred outside Ralph's estate before his death, namely funds withdrawn from a bank account held jointly by Ralph and Chris Jr., and certain property referred to as the "oil and gas interests," that Ralph deeded to Chris Jr. on July 11, 2003, about a month before Ralph's death. Appellants argue the trial court erred by allowing Andrew to seek damages for the value of this property without expert testimony that appellants had had a duty to "marshal assets outside of the

15

estate." Appellants also contend that, even if expert testimony was unnecessary, there was insufficient evidence for the jury to award Andrew damages for such assets.

¶28　　　　The jury rendered a general verdict on damages as well. At oral argument in this court, appellants' counsel stated it would have been impossible for the jury to have awarded the damages it did without including the value of these assets in its calculations. But counsel did not explain that contention with any particularity, nor did appellants argue this point in their briefs. *See* Ariz. R. Civ. App. P. 13(a)(6), 17B A.R.S. (appellant's argument "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on").

¶29　　　　In relation to a different point, appellants cited a portion of Andrew's closing argument in which he estimated the total damages were $3.4 million. The jury awarded Andrew $2, 937,125, approximately $462,000 less than Andrew's estimate. According to appellants, the amount Chris Jr. allegedly had withdrawn from the joint bank account was $600,000. Because one-half of $600,000 is less than the difference between Andrew's requested damages and the amount actually awarded, we cannot assume the jury included the value of the funds withdrawn from the joint bank account in their damage award. Thus, we do not consider appellants' argument as to that account.

¶30　　　　Assuming arguendo that the jury's verdict necessarily included some or all of the value of the oil and gas property, one-half of which was apparently $730,000, we reject

appellants' arguments as to that property. Contrary to their contention, whether the value of the property should have been included in the value of the estate was an issue of damages, not liability; therefore, no expert testimony was necessary. *See* A.R.S. § 12-2601(1)(c) ("Expert testimony is necessary to prove the licensed professional's standard of care or liability for the claim."). Appellants do not contest that, under Ralph's previous will, Andrew would have been the estate's personal representative and would have had the power and duty to "marshal the assets" of the estate. *See* A.R.S. §§ 14-3703-3711. A malpracticing attorney is liable for consequential as well as special damages. *See generally* Dan B. Dobbs, *Dobbs Law of Remedies*, Vol. 2, § 6.11, at 247 (2d ed.1993) ("A second layer of damages recovery includes consequential damages, those damages that result as a *consequence* of the fact that the malpractice plaintiff did not get the professional service to which he was entitled. In litigation malpractice, these are damages that could *not* have been recovered in the earlier litigation but that are nevertheless a result of losing that litigation."). Andrew lost the ability to contest the transfer of these assets outside of the estate when appellants failed to timely file what the jury determined would have been a successful contest of Ralph's will. Thus, the jury properly considered whether Andrew would have successfully challenged the transfers, and Andrew had no burden of showing a duty on appellants' part to assist Andrew in doing so.

¶31 Moreover, one of Andrew's theories for including the oil and gas property in Ralph's estate was that Ralph had deeded the property to Chris Jr. as a result of the latter's

17

undue influence on Ralph. There was sufficient evidence to support this theory. Chris Jr. drafted the deed for the property, and he was in a confidential relationship with Ralph when Ralph executed it. Therefore, sufficient evidence supports a presumption of undue influence. *See Stewart*. The record does not support a conclusion that, as a matter of law, appellants rebutted this presumption with clear and convincing evidence. *See Shumway*. Moreover, the jury could have determined that much of the same evidence of undue influence discussed above as to the will also applied to execution of the deeds. Therefore, sufficient evidence existed for the jury to include this property in the value of the estate, if in fact that is what it did.

**¶32**        Affirmed.


_____

                                        M. JAN FLÓREZ, Presiding Judge

CONCURRING:


_____
JOHN PELANDER, Chief Judge


_____
PHILIP G. ESPINOSA, Judge

18