968 P.2d 612

**Daniel SHEPPARD, individually, and as next best friend of Tarik Sheppard, a minor, Plaintiff–Appellee,**

v.

**CROW–BARKER–PAUL NO. 1 LIMIT-ED PARTNERSHIP, a Texas limited partnership, Defendant–Appellant.**

**No. 1 CA–CV 97–0394.**

Court of Appeals of Arizona, Division 1, Department C.

July 14, 1998.

Review Denied Dec. 7, 1998.

Teilborg, Sanders, & Parks, P.C. by Stephen Paul Forrest, Rick N. Bryson, and Vincent J. Montell, Phoenix, for Defendant–Appellant.

Levenbaum & Cohen by Steven A. Cohen, Phoenix, for Plaintiff–Appellee.

Copple, Chamberlin & Boehm, P.C. by Scott E. Boehm, Phoenix, for Plaintiff–Appellee.

FIDEL, Presiding Judge.

¶ 1   A minor guest sustained personal injuries at the Safari Hotel in Scottsdale, Arizona, from the shattering of a plate glass panel in a sliding door.  The hotel owner, Appellant Crow–Barker–Paul Limited Partnership ("Safari"), appeals from an adverse judgment and asks us to grant either judgment notwithstanding the verdict, new trial, or remittitur.  Safari also asks us to reverse the trial court's imposition of sanctions arising from its rejection of an offer of judgment.

¶ 2   In the course of our opinion, we consider what duties may arise when a hotel owner maintains plate glass doors in use that were installed before the enactment of legislation requiring safety glass in future installations.  We differentiate the owner's statutory and common-law duty under such circumstances, consider whether the jury was adequately instructed on each, and consider whether the evidence permitted the conclusion that Safari had violated its common-law duty of care.

¶ 3   We also consider whether a parent who brings an action on his minor child's

behalf for personal injuries and on his own behalf for medical treatment to the child may combine those claims in a single offer of judgment or must differentiate them in separate offers in order to take advantage of the offer of judgment rule.

¶ 4 We also consider whether the trial court properly handled what it treated as a spurious foundational objection when it permitted the proponent of the challenged evidence to amend the pretrial statement to add a foundational witness.

¶ 5 Finding no abuse of discretion in the trial court's rulings on these or other issues, we affirm.

## I. History

¶ 6 In July 1992, Tarik Sheppard ("Tarik")—then fifteen years old—was playing in a basketball tournament in Scottsdale, Arizona. The members and coaches of Tarik's team were registered guests at the Safari Hotel. Tarik was injured on the hotel premises when his teammate, Melvin Johnson, closed the sliding glass door to his hotel room as Tarik was about to enter the room. The parties dispute whether Tarik touched the door before it shattered or was merely reaching for the handle. The parties also dispute whether Johnson shut the door with ordinary or excessive force. They do not dispute that the door shattered into pieces of glass, severely lacerating Tarik's arms.

¶ 7 Tarik's father, Daniel Sheppard ("Sheppard"), brought this suit against Safari.[1] Because Tarik was a minor at the time, Sheppard asserted Tarik's claim for personal injuries and his own claim for the cost of necessary medical treatment for his son.

¶ 8 Safari denied liability, alleged Tarik's comparative fault, and named Tarik's friend, Melvin Johnson, as a non-party at fault. *See* Ariz.Rev.Stat. Ann. ("A.R.S.") § 12–2506(B) (Supp.1997) (permitting apportionment of fault to non-parties). The case proceeded to

a trial by jury and concluded in a $445,000.00 verdict in Sheppard's favor; the jury assigned Safari 100% of the fault.

¶ 9 Before trial, Sheppard had filed, and Safari had declined to accept, an offer of judgment pursuant to Arizona Rules of Civil Procedure, Rule 68:

[Plaintiff], by and through his attorneys undersigned, . . . offers to allow Judgment to be taken by [Plaintiff] against [Defendant] in the amount of Two Hundred Forty–Nine Thousand Five Hundred ($249,-500.00) Dollars, plus court costs accrued to date, and for which [Plaintiff] must prepare and file a Satisfaction of Judgment in favor of [Defendant].

¶ 10 The trial court entered formal judgment for Sheppard in the amount of $560,-937.96 on February 20, 1997; the judgment included the jury verdict, taxable costs of $8,790.23, and sanctions of $107,147.73 arising from Safari's failure to accept the offer of judgment. Safari moved alternatively for judgment notwithstanding the verdict or new trial/remittitur, the trial court denied these motions, and Safari filed a timely appeal from both the judgment and the denial of its post-trial motions.

## II. Duty to Install Safety Glass

¶ 11 Safari argues that, in a misleading and incomplete jury instruction, the trial court wrongly suggested that Safari had a pre-accident duty under the Arizona Revised Statutes or the Uniform Building Code to remove the unbroken existing glass from the sliding door in Melvin Johnson's hotel room—Room 249—and "retrofit"[2] the door with safety glass. The court's instruction was further mistaken, according to Safari, in suggesting that the violation of this duty was negligence per se. Safari further argues that, in the absence of evidence that it had notice of a dangerous condition in Room 249, it had no common-law duty to replace the glass, and that the court thus erred in deny-

---

**1.** The original complaint named Pals Land, Inc., and Trammel Crow, So. Ca., Inc., dba Safari Resort, as Defendants. Defendant Crow–Barker–Paul No. 1 Limited Partnership was later substituted as the proper defendant by stipulation of the parties.

**2.** When we speak of "retrofitting" in this opinion, we refer to the process of searching out unbroken plate glass doorpanes in sliding doors on the premises, removing them, and replacing them with panes of safety glass.

ing its motion for judgment notwithstanding the verdict.

### A. Supplemental Background

¶ 12   To place these arguments in context, we provide some further background:

¶ 13   In 1956, when the Safari Hotel was built, the Arizona Revised Statutes neither required safety glass nor proscribed plate glass in hotel sliding doors.

¶ 14   As of July 1, 1974, with the enactment of a set of safety glazing statutes, see A.R.S. §§ 36–1631 to –1635 (1993), the Arizona Legislature made it unlawful to install any form of glass other than safety glass in hazardous locations in public buildings, including hotel and motel sliding doors. See A.R.S. §§ 36–1631(1), –1631(3), –1633. The safety glazing statute, however, does not impose a *statutory* duty to retrofit pre–1974 installations with safety glass. See Piccola v. Woodall, 186 Ariz. 307, 311, 921 P.2d 710, 714 (App.1996).[3]

¶ 15   After Tarik's accident, the Safari Hotel staff discarded the broken glass from the sliding door in Room 249, preserving none for later expert examination. Nor is there a record of the year in which that doorpane was installed. Upon the basis of witness descriptions of the broken glass, however, Safari's expert witness, Edward Beers, offered the opinion that the pane was made of safety glass and may have been installed as recently as a week before the accident. In contrast, Sheppard's expert, Arthur Freedman, concluded from witness descriptions of the glass and from the nature of Tarik's cuts that the pane was made of annealed (plate) glass, not safety glass.

¶ 16   As of 1973, the Uniform Building Code ("UBC") established safety glass standards comparable to those embodied in A.R.S. §§ 36–1631 to –1633. On direct examination, Freedman testified without ob-

jection that, pursuant to UBC standards, "annealed glass is an unsafe material" in a sliding door. He also testified without objection that, pursuant to such standards, an owner who replaced annealed glass after 1973 was obliged to do so with safety glass. He did not suggest on direct examination that the code imposed an obligation to retrofit. On cross-examination, however, Safari's counsel asked Freedman to assume that the Safari hotel became aware after the promulgation of the UBC "that one of the doors in [its] building has annealed glass." Upon that assumption, Safari's counsel asked whether the owner would be obliged under the code to substitute safety glass. Freedman answered that the owner would be so obliged.[4]

¶ 17   Room 249 was located in the east building of the Safari Hotel. From the evidence submitted, the jury might have reasonably concluded that, during the twenty-one months before Tarik's accident, glass doorpanes had broken in that building; within that time frame, of the forty-eight panes within the building, eleven had been replaced by the hotel.

¶ 18   Over Safari's objection, the trial court incorporated the provisions of A.R.S. §§ 36–1631 to –1635 into a jury instruction that provided in pertinent part:

It is unlawful after July 1 of 1974 for any person who is responsible for installation of glazing materials, to knowingly install, cause to be installed or consent to the installation of glazing [materials] other than safety glazing materials in any hazardous location.

. . . .

If you find that the glass sliding door in room 249 of the Safari Hotel present on July 5 of 1992, was installed after July 1 of 1974, and was not safety glazing as defined above, then you may find that Defendant was negligent. You should then determine

---

3.   Sections 36–1631 to –1635 were added to the Arizona Revised Statutes by Laws 1973, ch. 31, § 1, eff. July 1, 1974. In an accompanying historical note, the Legislature stated, "The provisions of this act do not apply to a contract awarded prior to the effective date of this act." Ch. 31, § 2, 1973 Ariz. Sess. Laws 222, 224.

4.   It was proper for Freedman to testify regarding the UBC standards and the obligations imposed upon Safari under the code. See Hohlenkamp v. Rheem Mfg. Co., 134 Ariz. 208, 213, 655 P.2d 32, 37 (App.1982) (approving admission of industry safety codes through expert witness testimony).

whether that negligence was a cause of injury to Plaintiff Tarik Sheppard.[5]

The court did not refer in its instruction to the UBC.

¶ 19   Safari requested and the trial court declined to give the following additional jury instruction:

> The Uniform Building Code does not require the owner of premises to rebuild or retrofit his property in order to comply with a Uniform Building Code enacted after the date the property was constructed.

The court explained, "I am not giving any instruction with respect to the Uniform Building Code, [which] only comes in by reading that learned treatise to the experts on cross and on direct-examination."

### B.   Statutory Duty to Retrofit; Negligence Per Se

■■■   ¶ 20   Safari argues for a new trial on the ground that the trial court erroneously suggested to the jury in the quoted instruction that a hotel owner was statutorily obliged after 1974 to retrofit annealed glass sliding doorpanes installed before 1974 with panes of safety glass. Safari further argues that the instruction was phrased in terms of negligence per se.  Both arguments are patently mistaken.

¶ 21   First, the court expressly defined its instruction as applicable only "[i]f you find that the glass sliding door in room 249 ... was installed *after July 1 of 1974.*"[6] (emphasis added).  No statutory obligation to retrofit pre–1974 installations can reasonably be read into that instruction.

¶ 22   Second, the court instructed, if the jurors found that the door had been installed with something other than safety glass after 1974, "then you *may* find that Defendant was

negligent." (emphasis added).  This is not the language of negligence per se.  *Cf. RAJI (Civil) 3d Negligence 1* (1997) ("If you find from the evidence that a person has violated any of [the following] laws, that person *is* negligent." (emphasis added)).

### C.   Common–Law Duty to Retrofit

■■■   ¶ 23   Although Safari may have had no statutory duty to retrofit an unbroken annealed glass doorpane installed before 1974, *see Piccola,* 186 Ariz. at 311, 921 P.2d at 714, it had a common-law duty to avoid subjecting its guests to a foreseeable and unreasonable risk of harm.  *See id.* at 310, 921 P.2d at 713; *see also Murphy v. El Dorado Bowl, Inc.,* 2 Ariz.App. 341, 343–44, 409 P.2d 57, 59–60 (1965).  The trial court defined this duty to the jury in the following instruction:

> The duty of a hotel like defendant to its guests is to maintain its premises in a reasonably safe condition.  Defendant is required to use ordinary care to inspect for, warn of, safeguard against or remedy a dangerous condition of which Defendant has notice.

Safari does not object to the court's instruction on appeal.

■■■   ¶ 24   Safari seeks judgment notwithstanding the verdict, however, contending that Sheppard introduced no evidence that Safari had pre-accident notice of an unreasonably dangerous condition in Room 249.  We disagree.  "Actual knowledge of the dangerous condition is not required.  The duty to inspect arises when the [owner] 'has reason to suspect' a defect."  *Piccola,* 186 Ariz. at 311, 921 P.2d at 714.[7]

¶ 25   Sheppard introduced substantial evidence to establish that Safari had reason to suspect a defect.  Arthur Freedman testified

---

**5.**  The court's instruction included statutory labeling standards and definitions of hazardous locations, public buildings, and safety glazing material.

**6.**  The court explained to counsel that it deemed the instruction necessary to cover the possibility—a possibility arising from the testimony of Safari's expert Mr. Beers—that the jury might find that the glass had been replaced after July 1974.

**7.**  In *Piccola,* we rejected the argument in a landlord/tenant context that the mere existence of the safety glazing statute, A.R.S. §§ 36-1631 to –1635, should place landlords on constructive notice of the danger posed by plate glass doorways on their rented premises.  *Piccola,* 186 Ariz. at 311, 921 P.2d at 714.  The court did not consider in that case whether a different standard should apply to those who manage a hotel.  Nor need we determine that question in this case, as Sheppard has not invoked the statute as a source of constructive notice.

from a review of hotel records that the glass doors in the east building were breaking with regularity and that Safari had already replaced eleven of the forty-eight doorpanes in that building in the twenty-one months before Tarik's accident. The jury could reasonably have inferred that, in the course of Safari's clean-up and replacement effort, the Safari management had abundant opportunity to discover that its guests were exposed to the danger of annealed glass doors.

¶ 26 Moreover, it was undisputed that Tarik's friend Melvin Johnson had reported a malfunction in the Room 249 door to Safari management before Tarik's injury—specifically, that the door was not rolling properly in its track. This testimony, coupled with Freedman's testimony, permitted the jury to conclude that Safari should have known before the accident that a door containing annealed glass was unstable within its track. That door was the single entrance and exit for Room 249. Upon such evidence, the jury could properly have concluded that Safari had reason to suspect a dangerous condition and that it breached its common-law duty to use ordinary care to inspect for, warn of, safeguard against, or remedy that condition.

### D. What the Uniform Building Code Required

¶ 27 The trial court refused Safari's request to instruct the jury that the Uniform Building Code does not require an owner to rebuild or retrofit his property to replace non-conforming glass installed before the enactment of the code. Relying heavily on *Piccola*, Safari proffers the rejected UBC instruction as a necessary corrective or clarification to the instruction that the trial court chose to give.

¶ 28 Safari reasons from a faulty premise. Mistakenly equating what the Arizona

Revised Statutes require as a matter of law with the standards established by the UBC, Safari misreads both the trial court's instruction and *Piccola*. First, it assumes incorrectly that the trial court informed the jury of the requirements of the UBC. The trial court did not do so. It adapted its instruction from the language of A.R.S. §§ 36–1631 to –1635, not the language of the code; told the jury what "the law" requires, not what the code requires; and expressly informed counsel that it was "not giving any instruction with respect to the Uniform Building Code." [8]

¶ 29 Second, Safari overstates the holding of *Piccola*. We held there that the safety glazing statute, A.R.S. §§ 36–1631 to –1635, does not impose a statutory duty to retrofit pre–1974 construction with safety glass. *See Piccola*, 186 Ariz. at 311, 921 P.2d at 714. Similarly, we held that the Arizona Residential Landlord and Tenant Act does not impose that statutory duty upon landlords. *See id.; see also supra* n. 7. This was statutory interpretation, however, and did not foreclose reference to the UBC as a source of standards pertinent to the common-law assessment of unreasonable danger on the premises. Further, in *Piccola*, we relieved a landlord of liability for a hazardous condition that the tenant had had a reasonable opportunity to discover and correct. *See Piccola*, 186 Ariz. at 312, 921 P.2d at 715 (applying Restatement (Second) of Torts § 358(2) (1965)). In that landlord/tenant case, we did not consider in any respect the obligations owed by hotel management to hotel guests.

¶ 30 In short, the UBC instruction proposed by Safari as a corrective was unsupported by the law, inconsistent with the evidence,[9] and unresponsive to the instruction that it was tendered to correct. The trial court, having declined to give any instruction

---

8. In the Arizona Residential Landlord and Tenant Act, A.R.S. § 33–1324(A)(1) (Supp.1997) requires landlords to "[c]omply with the requirements of applicable building codes materially affecting health and safety." *Accord Piccola,* 186 Ariz. at 311, 921 P.2d at 714. This is not a landlord/tenant case, however, and the trial court did not draw any part of its instructions from that statute.

9. Counsel for Safari, when cross-examining Mr. Freedman, elicited expert testimony that section 104 of the UBC requires hotel management to engage in retrofitting if the management becomes aware of annealed glass in use in sliding doors upon its premises. The purely statutory analysis in *Piccola* does not suggest that the record in that case included expert analysis of the standards of the UBC.

concerning the UBC, did not err by refusing to give the instruction that Safari proposed.[10]

¶ 31 We review jury instructions as a whole to determine whether the jury was properly guided in its deliberations. *See Terry v. Gaslight Square Assocs.*, 182 Ariz. 365, 368, 897 P.2d 667, 670 (App.1994). Viewing the instructions in this case as a whole, we find them applicable, appropriate to the evidence, and supported by the law.

## III. HEARSAY

¶ 32 Safari argues that the trial court improperly allowed Sheppard's counsel to introduce Tarik's out-of-court statements to his parents describing how the accident occurred.[11] These statements, Safari maintains, were inadmissible hearsay, wrongly regarded by the trial court as admissible prior consistent statements under Rule 801(d)(1)(B), Arizona Rules of Evidence.[12] We will not reverse based upon an evidentiary ruling unless we find a clear abuse of discretion and demonstrable prejudice. *See Cotterhill v. Bafile*, 177 Ariz. 76, 81, 865 P.2d 120, 125 (App.1993). We find neither here.

¶ 33 Tarik's father testified at trial; Tarik's mother testified through deposition. According to his mother, when Tarik described the accident to her, he did not tell her that he had walked into the sliding glass door, nor did he tell her that Melvin had slammed the door. According to both parents, Tarik said that he was reaching for the door handle when the glass shattered and cut him. These descriptions of Tarik's account after the accident were consistent with Tarik's account at trial.

¶ 34 The parties dispute whether these statements were properly admitted to rebut Safari's implication that Tarik was fabricating how the accident occurred. Safari denies that it accused Tarik of fabrication, but its denial is contradicted by the record. Both in cross-examining Tarik and in final argument, Safari's counsel explicitly undertook to persuade the jury that Tarik was misrepresenting how the accident occurred.

¶ 35 Safari argues also that Sheppard did not meet the Rule 801(d)(1)(B) foundational requirement of showing that Tarik made his statements to his parents *before* the motive to fabricate arose. Safari never made this objection to the trial court, however, and it comes too late upon appeal.

¶ 36 Further, Safari never argues how it was prejudiced by the parents' rendition of Tarik's account of the accident. The parents' comments on this subject were so general and innocuous that they added nothing substantial to Tarik's own trial court account, which Safari subjected to a thorough cross-examination. We therefore find this issue wholly without merit.

## IV. AMENDMENT OF JOINT PRETRIAL STATEMENT

¶ 37 Safari argues that the trial court improperly allowed Sheppard's witness, Don Naumann, to testify at trial to provide a foundation for photographs of the sliding glass door that he took in August 1992. Specifically, Safari maintains that, because Naumann was not listed as a witness on the joint pretrial statement, he should have been precluded from testifying at trial.

10. We note from the record that Safari's counsel, when arguing in support of its UBC instruction, acknowledged that the trial court's instruction concerned statutory requirements, not the requirements of the UBC. Counsel requested that Safari's instruction be amended to provide, "[T]he *law* does not require ... the owner of premises to rebuild or retrofit his property in order to comply with the Uniform Building Code enacted after the date the property was constructed." (emphasis added). Even as amended, however, the instruction continued to address the Uniform Building Code. Further, its broad wording was subject to misconstruction concerning an owner's obligation under common law. Safari argues on appeal only for the original version of its instruction and does not argue that the trial court erred in declining to give the proposed amended form.

11. Although Appellant makes the same argument with respect to Diane Storm, Tarik's aunt, Storm testified that Tarik did not tell her anything about how the accident had occurred.

12. Rule 801(d)(1)(B) provides that a statement is not hearsay if the statement is:

consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

¶ 38 The issue surfaced at trial when Sheppard's expert, Arthur Freedman, referred to Naumann's photographs, which Freedman had reviewed and relied upon in formulating his opinions. Safari objected that Freedman could not provide the necessary foundation for the photographs and that Naumann could not be called to do so as he had not been listed on the pretrial statement. The trial court, on its own motion, cured this omission by allowing Sheppard to amend the pretrial statement to add Naumann as a foundational witness. Safari contends that the trial court abused its discretion in allowing this amendment when it had "repeatedly indicated it would strictly enforce the Joint Pre–Trial Statement and not admit evidence or witnesses not listed."

¶ 39 To find this issue raised at trial and perpetuated on appeal is troubling. Naumann and his photos had been identified to Safari in Sheppard's initial disclosure statement, copies of the photos had been given to Safari almost three years before trial, and Safari had known for those three years that Freedman would rely on the photos in forming his opinions. The trial court correctly described Safari's foundational objection as a "plain game," adding, "This is the only trial I have had in the last seven months where the foundation in *every* exhibit was objected to." (emphasis added).

¶ 40 The trial court did not abuse its discretion by thwarting such gamesmanship. Rather, the trial court properly exercised its discretion pursuant to Rule VI(a)(4) of the Uniform Rules of Practice of the Superior Court to permit an unlisted witness for "good cause." *See Allstate Ins. Co. v. O'Toole*, 182 Ariz. 284, 287–88, 896 P.2d 254, 257–58 (1995). Foundational objections serve a useful purpose when there is a legitimate foundational question to explore. To make such objections, however, merely to force one's adversary to "do it the hard way" wastes court time and client dollars. To lawyers tempted to interrupt or slow the serious work of trial with similar objections in the future, we commend these passages from "A Lawyer's Creed of Professionalism of the State Bar of Arizona":

A.2. I will endeavor to achieve my client's lawful objectives ... in litigation as expeditiously and economically as possible;

B.3. In litigation proceedings I will agree to ... waiver of procedural formalities when the legitimate interest of my client will not be adversely affected;

C.9. In civil matters, I will stipulate to facts as to which there is no genuine dispute.

## V. COUNSEL'S ALLEGED MISCONDUCT

¶ 41 Safari argues that three acts of misconduct by Sheppard's counsel (Cohen) require the grant of a new trial. The trial court found none of them a basis for mistrial or new trial. We review for abuse of discretion and find none.

### A. *Improper Reference to Insurance*

¶ 42 Cohen elicited a reference to insurance companies in direct examination of Sheppard's glass expert, Edward Holdsworth:

Q: Can you give the jury an idea what type of person or company would consult with you?

A: (Holdsworth) Well, roughly 10, maybe, 15 percent of our work is what we loosely define as forensic work, that includes activity such as today where I appear in court giving evidence. *Also includes working for insurance companies.* Many times they wish to know simply if a claim seems reasonable from a physical evidence standpoint.

(emphasis added).

¶ 43 Safari acknowledged in its written motion for mistrial that "the mere mention of insurance in a negligence action will not constitute grounds for a mistrial." Rather, it must be shown to have unduly prejudiced Safari's right to a fair trial. *See Cervantes v. Rijlaarsdam*, 190 Ariz. 396, 398, 949 P.2d 56, 58 (App.1997); *Davis v. Marquardt*, 20 Ariz.App. 372, 374, 513 P.2d 379, 381 (1973). Yet Safari has attempted no showing of prejudice on appeal, asserting merely that Holdworth's reference to consulting for insurance companies tended "to bolster [his] credibility."

¶ 44 An attorney is entitled to attempt to bolster the credibility of a forensic expert in a personal injury trial by introducing evidence that the witness consults for parties on both the plaintiff's and defense side. Although one can ordinarily do so without reference to insurance, Safari provides us with no basis for reversal, given its failure to argue or identify any prejudice from the passing reference in this case.

### B. Handling of Glass Exhibit

¶ 45 Safari claims that Cohen intentionally violated a trial court ban on demonstrations when he placed his hand in a box of safety glass while examining Safari's witness, Mr. Beers. According to Safari, Cohen "swirled his hand or attempted to swirl his hand around the glass" in a prejudicial attempt to discredit Beers's testimony that even safety glass can cause severe lacerations. According to Cohen, his "hand may have dropped below the cardboard," but he did not recall touching the glass.

¶ 46 Safari incorrectly represents that the trial court "confirmed on the record that it saw and heard [Cohen] handle the glass." The trial court merely commented that it "heard glass tin[k]ling," to which Cohen responded that the tinkling might have resulted from his moving the box. After considering the argument and explanations of counsel, the trial court found no basis for mistrial, and Safari provides no reason for us to substitute our judgment. *See Bledsoe v. Salt River Valley Water Users' Ass'n,* 179 Ariz. 469, 473, 880 P.2d 689, 693 (App.1994).

### C. Closing Argument

¶ 47 Safari adds that Cohen engaged in reversible misconduct by stating to the jury in closing arguments that he had spoken with Tarik's parents regarding the value of the case. We are puzzled by this argument. Cohen represented not only Tarik, a teenager, but also his father, Daniel Sheppard. The jury could not possibly have been surprised, much less prejudiced, by hearing that Cohen and Tarik's parents had discussed the sum that Cohen would ask the jury to award. Safari does not attempt to argue how such prejudice might have oc-

curred. On this ground, as on the others mentioned, the trial court found no basis for mistrial or new trial, and we defer.

### VI. LOSS OF CHANCE TESTIMONY

¶ 48 Safari argues that, because the trial court improperly admitted evidence of Tarik's professional basketball aspirations, the jury returned an excessive verdict, inflated by passion and prejudice and by the improper economic assessment of a lost chance.

¶ 49 The jury learned that, at the time Tarik was injured, he was a star basketball player in the Riverside Church program, which showcased talented young basketball players in the New York City area. Tarik had been named most valuable player on his high school team the season before his accident, and was often named most valuable player when the Riverside group toured the country. He maintained a strict practice regimen, performed well in his studies, and dreamed of playing professional basketball. Friends sometimes called him "NBA" or "Franchise." After the accident, Tarik's basketball skills were diminished, though to a disputed degree, and his aspirations were more modest than before.

¶ 50 Safari had moved in limine to exclude evidence regarding the impact of the accident on Tarik's basketball aspirations, and Sheppard had agreed not to claim loss of earning capacity or special damages on the basis of such evidence. Sheppard maintained, however, that as part of Tarik's general damages claim, he could permissibly establish how the accident had diminished Tarik's playing skill and, in consequence, altered Tarik's self-perception and future hopes.

¶ 51 The trial court permitted the disputed evidence as relevant to Tarik's general damage claim. The court instructed the jury, however, as follows:

Damages that are speculative, remote or uncertain may not form the basis for your award.

[Tarik] is not claiming that he is entitled to a lost NBA salary based on a lost chance to play in the NBA. It is speculative, remote, or uncertain whether he would

play in the NBA. However, [Tarik] is claiming damages for loss of enjoyment of an activity, basketball, and the diminution in his ability to play basketball.

¶ 52 Both in presenting and arguing the evidence in question, Sheppard confined himself to a general damage claim for loss of enjoyment, not a special damage claim for loss of a chance. We find that the trial court appropriately handled this issue, both in evidentiary rulings and instructions.

¶ 53 As for Safari's assertion that the verdict was excessive or the product of passion and prejudice, we defer to the trial court's contrary finding. The amount of an award for damages is a question peculiarly within the province of the jury, and the award will not be overturned or tampered with unless we find that the verdict was, indeed, the result of passion or prejudice. A reviewing court will not alter a jury's damage verdict unless it finds the amount so unreasonable that it "shocks the conscience" of the court. *See Larriva v. Widmer,* 101 Ariz. 1, 7, 415 P.2d 424, 430 (1966).

¶ 54 According to Tarik's surgeon, the glass cut through virtually every structure in the mid-portion of Tarik's left arm; Tarik underwent lengthy microsurgery to repair lacerations to the left forearm muscles, medial nerve, ulnar nerve, medial artery, brachial artery, ulnar artery, two major nerves of the hand, and multiple tendons. Tarik required extensive physical therapy and suffers permanent impairment, including numbness of the left index and middle fingers. He also carries permanent scars that are thick and wide. The trial court, after hearing such evidence, did not find the verdict excessive or shocking to the conscience. Neither do we.

## VII. OFFER OF JUDGMENT

¶ 55 Safari next contends that the trial court erred in sanctioning Safari under Ariz. R. Civ. P. 68(d) for its failure to accept Sheppard's offer of judgment. Rule 68(d) states:

> If the judgment finally obtained is equal to, or more favorable to the offeror than, the offer, the offeree must pay, as a sanction, those reasonable expert witness fees and double the taxable costs of the offeror ... incurred after the making of the offer, and prejudgment interest on unliquidated claims to accrue from the date of the offer.

Safari argues that the offer of judgment was invalid because it did not apportion the judgment between two separate plaintiffs in accordance with *Duke v. Cochise County,* 189 Ariz. 35, 938 P.2d 84 (App.1996).

¶ 56 The *Duke* court relied on cases from other jurisdictions in holding that "unapportioned joint offers [comprising multiple parties or claims are] invalid for purposes of imposing sanctions under Rule 68(d), regardless of the outcome at trial." *Id.* at 41, 938 P.2d at 90. The court reasoned that unapportioned joint offers of judgment "deprive[ ] the offeree of the opportunity to assess his or her chances of doing better at trial against one or more of the parties covered by the joint offer." *Id.*

¶ 57 The trial court distinguished this case from *Duke* as one initiated by a single adult plaintiff on behalf of his minor son. Neither *Duke* nor the cases that it cited involved a single plaintiff acting as a representative of another in the capacity of next friend, conservator, or guardian ad litem. Rather, they involved multiple plaintiffs, multiple claims, or both.[13]

¶ 58 We recognize that Daniel Sheppard advanced not only Tarik's injury claim but also his own claim for the costs of Tarik's medical care. These are ordinarily two aspects of an individual personal injury claim, however, and were divided solely due to Tarik's minority. In our opinion, the trial court correctly found the *Duke* rationale inapplicable in such a case, and properly subjected Safari to the application of Rule 68(d).

---

13. *See Brinkerhoff v. Swearingen Aviation Corp.,* 663 P.2d 937 (Alaska 1983); *Taylor v. Clark,* 883 P.2d 569 (Colo.Ct.App.1994); *Gilbert v. City of Caldwell,* 112 Idaho 386, 732 P.2d 355 (Idaho Ct.App.1987); *Bergmann v. Boyce,* 109 Nev. 670, 856 P.2d 560 (1993); *True v. T & W Textile*

*Machinery, Inc.,* 112 N.C.App. 358, 435 S.E.2d 551 (1993), *aff'd,* 337 N.C. 798, 448 S.E.2d 514 (1994); *D'Huyvetter v. A.O. Smith Harvestore Prods.,* 164 Wis.2d 306, 475 N.W.2d 587 (Wis.Ct. App.1991).

## VIII. CONCLUSION

¶ 59   For the reasons discussed above, we affirm the judgment against Safari and the denial of Safari's request for new trial, remittitur, or judgment notwithstanding the verdict.

LANKFORD and GRANT, JJ., concur.