NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DEVIN DEMETRIUS RONDAN, *Appellant*.

No. 1 CA-CR 18-0670
FILED 10-10-2019

Appeal from the Superior Court in Maricopa County
No. CR 2018-001853-001
The Honorable Erin Otis, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Elizabeth B. N. Garcia
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Thomas K. Baird
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Michael J. Brown joined.

---

**C A M P B E L L**, Judge:

¶1        Devin Rondan appeals his convictions and sentences for possession of dangerous drugs and narcotics for sale.[1] For the following reasons, we affirm.

## BACKGROUND

¶2        While Rondan received medical treatment for injuries he sustained in "an unrelated matter," a police officer searched his personal belongings for weapons, and in so doing, found a "rocky" substance the officer "believed to be drugs," as well as a lighter and $147.[2] After this discovery, an attending hospital nurse provided police officers with a clear plastic bag she had removed from Rondan's rectum. Inside the bag, officers found 17 small baggies, each containing a powdery substance, and a folded dollar bill. Subsequent testing revealed that: (1) the rocky substance was crack cocaine (3.83 grams); (2) 11 baggies contained cocaine (1.535 total gram weight); and (3) 6 baggies contained methamphetamine (193.7 total milligram weight).

¶3        The State charged Rondan with one count of possession of dangerous drugs for sale (Count 1—methamphetamine), two counts of possession of narcotic drugs for sale (Count 2—crack cocaine having a weight that exceeded the statutory threshold; Count 3—cocaine), and three counts of possession of drug paraphernalia (Counts 4–6). The State also alleged aggravating circumstances and that Rondan had four prior felony

---

[1]        Rondan was also convicted of three counts of possession of drug paraphernalia but does not challenge those convictions or sentences on appeal.

[2]        At trial, the parties stipulated that the circumstances leading to Rondan's hospitalization would not be disclosed to the jury.

convictions and committed the alleged offenses while on release from confinement.

¶4        After a four-day trial, a jury found that Rondan committed the offenses as charged and while on release from confinement. At sentencing, the superior court imposed concurrent, presumptive terms of 15.75 years' imprisonment on Counts 1 through 3 and concurrent, presumptive terms of 3.75 years' imprisonment on Counts 4 through 6. Rondan timely appealed.

## DISCUSSION

¶5        Rondan contends the superior court erroneously admitted drug-courier profile testimony as substantive evidence of guilt. Because Rondan failed to object to this evidence at trial, we review only for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 20 (2005). To prevail under this standard, Rondan must establish the existence of error and show that the error: (1) went to the foundation of the case; (2) took from him a right essential to his defense; or (3) was so egregious that he could not possibly have received a fair trial. *See State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). If Rondan establishes fundamental error under prongs one or two, he must make a separate showing of prejudice, but if he establishes error under the third prong, he has shown both fundamental error and prejudice. *See id*.

¶6        "Drug-courier profile evidence suggests that a defendant possesses one or more behavioral characteristics typically displayed by persons trafficking in illegal drugs." *Escalante*, 245 Ariz. at 142, ¶ 22. Stated differently, it is "a loose assortment of general, often contradictory, characteristics and behaviors" "offered to implicitly or explicitly suggest that *because* the defendant has those characteristics, a jury should conclude that the defendant must have committed the crime charged." *State v. Lee*, 192 Ariz. 542, 544, ¶ 10 (1998); *State v. Haskie*, 242 Ariz. 582, 585–86, ¶ 14 (2017). While such evidence has some legitimate uses, such as assisting a jury in understanding the *modus operandi* of a drug-trafficking organization, it may not be "used as substantive proof of guilt because of the risk that a defendant will be convicted not for what he did but for what others are doing." *Escalante*, 245 Ariz. at 142, ¶ 22 (internal quotations omitted).

¶7        In this case, the prosecutor elicited testimony from Detective Ryan Moskop regarding the sale and use of illegal drugs. Although he was not personally involved with the investigation, Detective Moskop provided expert opinion testimony based on his extensive experience with drug

cases, recounting common concealment techniques, typical packaging of controlled substances, the street value of drugs, and the types of drug paraphernalia frequently used to ingest various substances. After laying this foundation, the detective discussed his review of the evidence in this case.

**¶8** With respect to the seized crack cocaine, Detective Moskop testified that the quantity was greater than that typically associated with personal use, but he acknowledged that the packaging, as a single unit, was inconsistent with possession for distribution. According to Detective Moskop, the inverse was true, however, for the uniform baggies of methamphetamine and cocaine; that is, for those substances, the overall weight was not inconsistent with personal use, but the packaging reflected possession for distribution purposes.

**¶9** When asked about the lighter and dollar bill found near the drugs, Detective Moskop acknowledged that the paraphernalia was consistent with personal use, but he also noted that users and sellers are not mutually exclusive, and the presence of the paraphernalia did not foreclose the possibility that the drugs were possessed for distribution. Likewise, while acknowledging that no measuring device was found with the drugs, Detective Moskop explained that the absence of a scale was not determinative because the drugs were already weighed and packaged. Although both drug sellers and users may possess multiple types of drugs and "stash" drugs rectally, the detective testified that the uniform appearance of the drugs and their packaging was consistent with possession for sale.

**¶10** At the outset of his closing argument, the prosecutor defined the only contested issue for the jury — whether Rondan possessed the seized drugs for sale or personal use. Relying heavily on Detective Moskop's testimony, the prosecutor then argued that the "totality of the circumstances," particularly the weight and packaging of the drugs, was consistent with possession for sale.

**¶11** An expert may testify within his expertise about a subject that is beyond the typical juror's knowledge and experience. Ariz. R. Evid. 702, 703. While an expert may not opine that a constellation of otherwise innocent behaviors, when grouped together, provides substantive proof of drug trafficking, the prohibition on drug-courier profile evidence does not preclude an expert from explaining the different characteristics associated with drugs possessed for sale and personal use. *See Escalante*, 245 Ariz. at 142, ¶ 22; *Lee*, 192 Ariz. at 544, ¶ 10.

**¶12** In this case, there was no dispute that Rondan possessed the drugs and, therefore, no risk that he would be convicted of criminal conduct based on innocent behavior. *See also United States v. Espinoza-Valdez*, 889 F.3d 654, 658–59 (9th Cir. 2018) ("Drug courier profile testimony is inherently prejudicial because of the potential it has for including innocent citizens as profiled drug couriers and because simply matching a defendant to a drug profile may unfairly suggest to the jury that otherwise innocuous conduct or events demonstrate criminal activity."). Rather than presenting drug-courier profile evidence, Detective Moskop provided qualified expert testimony and context for the jury concerning the nature of the physical evidence found on Rondan's person and in his hospital room. *See United States v. Speer*, 30 F.3d 605, 610 (5th Cir. 1994). Therefore, the superior court did not err, much less commit fundamental error, by admitting Detective Moskop's expert opinion testimony.

## CONCLUSION

**¶13** For the foregoing reasons, we affirm Rondan's convictions and sentences.

