NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JACKSON NGUYEN and TRINH TA, *Plaintiffs/Appellants*,

*v.*

AMERICAN COMMERCE INSURANCE COMPANY, *Defendant/Appellee*.

No. 1 CA-CV 12-0862
FILED 4-8-2014

Appeal from the Superior Court in Maricopa County
No. CV2009-033330
The Honorable Eileen S. Willett, Judge

**AFFIRMED**

COUNSEL

Richard Langerman, Phoenix
*Counsel for Plaintiffs/Appellants*

Carnahan Perry Hanlon & Hudson, PLC, Phoenix
By Michael R. Perry
*Counsel for Defendant/Appellee*

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge John C. Gemmill and Judge Randall M. Howe joined.

**T H U M M A,** Judge:

¶1          Plaintiffs Jackson Nguyen (Nguyen) and Trinh Ta (Ta) sued American Commerce Insurance Company (ACIC) for breach of contract and bad faith arising out of ACIC's denial of their insurance claim for loss or theft of an $80,000 diamond ring. Plaintiffs appeal a jury verdict for defendant ACIC. Finding no reversible error, the verdict is affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

¶2          In July 2006, Nguyen called ACIC to obtain a homeowner's insurance policy in Ta's name and spoke on the telephone with ACIC customer service representative Michelle Canter. Plaintiffs and ACIC dispute whether Nguyen was ever asked about prior insurance policies or losses during this call. Nguyen maintains that he was not asked about those issues and trial testimony indicated the transcript of the phone call did not indicate those questions were asked. An ACIC computer printout of Nguyen's telephone application, however, indicates he answered "no" to both having a prior policy cancellation and having a prior loss. Canter could not recall the specific conversation with Nguyen, but stated she would have had to go through the process with him to write the policy and that the common business practice was to "input the information [from the insureds] to the questions [in the computer database] before binding the policy." It was ACIC's business practice to obtain a signed paper application subsequent to any phone application. ACIC offered evidence that it mailed an application to plaintiffs but never received a signed application. Nguyen maintained he never received a written application from ACIC, speculating it had been mailed to a prior address. ACIC presented evidence that not receiving a signed paper application is common in the insurance industry.

¶3          At the time of his telephone application with ACIC, Nguyen asked about adding his wife's diamond ring to the policy. In response, Canter told Nguyen he needed an appraisal before the ring could be added to the policy.

---

[1] This court views the evidence in the light most favorable to upholding the verdict. *Powers v. Taser Int'l Inc.*, 217 Ariz. 398, 399 n.1, ¶ 4, 174 P.3d 777, 778 n.1 (App. 2007).

¶4          In August 2008, Nguyen sent an appraisal valuing the ring at $80,000 to ACIC along with a letter asking that ACIC add the ring to Ta's policy. ACIC then added the ring to the policy.

¶5          In February 2009, plaintiffs visited a shopping mall. Ta, who was several months pregnant at the time, felt sick and went into a restroom and passed out. Ta was taken to the hospital where she noticed the ring was missing. Although plaintiffs did not file a police report, they submitted a claim for the value of the ring and ACIC began an investigation.

¶6          ACIC initially obtained estimates for the replacement cost of the ring, spoke with the merchant who appraised the ring in August 2008, obtained credit reports for plaintiffs, researched plaintiffs' house value and other financial information in an attempt to determine credit-to-debt ratios, checked a loss database and completed a claims file analysis. ACIC then decided to obtain further financial documentation and conduct examinations under oath (EUO) of plaintiffs. ACIC also continued investigation into possible prior losses claimed by plaintiffs.

¶7          In March 2009, ACIC retained attorney Michael Perry to conduct the EUOs. Perry conducted EUOs for both Nguyen and Ta. Although Perry also requested financial and other records, plaintiffs refused to provide financial information. As a result, in April 2009, ACIC sent plaintiffs a letter stating that it would not proceed with the investigation and would not pay the claim because they had failed to provide information regarding their financial condition and records relating to the purchase of the ring. At that point, plaintiffs had provided ACIC with sworn testimony regarding their purchase and ownership of the ring, an appraisal, some witnesses who indicated that they had seen Ta wear the ring and photographs they claimed showed Ta wearing the ring.

¶8          In June 2009, ACIC discussed the claim a few times with Perry and several senior claims personnel and discussed any other avenues it could explore to consider to plaintiffs' claim. Ultimately, the group decided to draft a denial letter. ACIC also unsuccessfully attempted to obtain security tapes from the mall where Ta passed out. ACIC investigated another prior loss database, plaintiffs' neighborhood and further reviewed its own records on plaintiffs' application and policy.

¶9          In early July 2009, ACIC denied plaintiffs' claim, citing three reasons:  (1) a failure to show ownership of the ring; (2) misrepresentation

or fraud in the insurance application and (3) misrepresentation or fraud in the submission of the claim. Plaintiffs then sued ACIC, claiming breach of contract and bad faith. ACIC also cancelled the policy, effective August 2009.

¶10　　　During discovery, a dispute arose as to whether the attorney-client privilege protected ACIC's claim investigation file from discovery. Plaintiffs moved to compel, and after briefing and oral argument, the superior court originally granted the motion because ACIC "failed to articulate a legal issue for which legal advice was given and . . . attorney client privilege should attach to the claims and investigative file."

¶11　　　ACIC moved to reconsider, arguing Perry was retained to "assist in [ACIC's] investigation and to provide a coverage determination," which necessarily included legal advice. After full briefing and oral argument, the superior court found that the attorney-client privilege applied and had not been waived. The court noted that, although "defense counsel did conduct some investigation into Plaintiff's claim, such investigation does not then render all communication between [ACIC] and its counsel automatically discoverable. . . . Its defense is not based upon advice of counsel, but rather on the basis that its actions were objectively reasonable." The court added, however, that "[b]ecause defense counsel did conduct an investigation which can be considered similar to the work of a claims adjuster and therefore discoverable," an in-camera inspection was warranted. The court then appointed a special master, who reviewed the documents at issue and determined what documents were fully discoverable, what documents were privileged and non-discoverable and what documents were discoverable with redaction.

¶12　　　At trial, the jury received evidence about inconsistencies in plaintiffs' insurance claim. Plaintiffs provided little information or documentation regarding the purchase of the ring or the seller. Nguyen claimed he ran into the seller, an old friend from school identified by the first name "Ha," while in California for a celebration. Nguyen testified that Ha was selling the ring for $75,000. Nguyen testified that all he knew about the seller was his first name, and yet Nguyen gave him $20,000 cash that day as a down payment on the ring and Ha allowed Nguyen to take the ring to ensure his wife would like it. Nguyen did not get an appraisal before this transaction, and did not obtain any documentation regarding the transaction.

¶13　　　Nguyen testified that he then made several trips to California, each time paying Ha additional cash installments totaling

$55,000 (the balance owed). Although saying he had Ha's phone number during the sale, Nguyen added that Ha's phone was then disconnected and Nguyen later lost Ha's phone number, so he could not provide that number to ACIC. Nguyen testified he used a calling card to call Ha and paid cash for everything during his trips to California. At trial, ACIC offered evidence that it attempted to call some of the "hundreds" of California phone numbers reflected in plaintiffs' phone records, it could not locate Ha and had no evidence, other than plaintiffs' testimony, that Nguyen had traveled to California.

¶14        ACIC's investigation revealed that Nguyen had prior insurance policy claims and cancellations. Nguyen's testimony at trial revealed that he had filed several insurance claims for personal injury and hit and run accidents between 1999 and 2004. In March 2004, Nguyen's homeowner's policy with Prudential Insurance was cancelled after Nguyen claimed and was paid an $18,674 replacement cost for lost or stolen jewelry, asserting the jewelry went missing after being left in a drawer that was handled by movers he hired off the street. In May 2004, Nguyen applied for and obtained an ACIC homeowner's policy for a home plaintiffs later sold. The phone application for that policy indicates Nguyen denied any prior losses or cancellations within the previous three years. In June 2004, however, ACIC cancelled Nguyen's policy based on Prudential's March 2004 cancellation. In July 2006, the new ACIC policy was placed only in Ta's name, and ACIC did not discover Nguyen's prior losses and cancellations at that time.

¶15        ACIC also discovered that plaintiffs' financial condition at the time of their claim was unstable. Trial evidence indicated that plaintiffs' "monthly expenses far exceeded their income." Nguyen testified that he had lost his job two days before submitting the claim. In addition, the investigation, EUOs and trial testimony had several inconsistencies regarding the source of the cash for the ring, a fact ACIC was not able to resolve. Nguyen failed to disclose a certificate of deposit account in his EUO. In her EUO, Ta initially denied that any of her funds were used to pay for the ring, but at trial agreed that some of the money used to purchase the ring came from her tips at work, which she does not report as taxable income and amounted to about $300 per week. While Ta testified that she did not deposit her tips in a bank account, ACIC's forensic financial expert testified the balance in plaintiffs' bank account was consistent with Ta's salary, including her tips, being deposited in the account.

¶16         After an eight-day trial, the jury unanimously found for ACIC in a general verdict. Plaintiffs moved for a new trial, arguing that the superior court erred in admitting into evidence Exhibit 35 (an ACIC computer printout of plaintiffs' insurance application) and in refusing to give plaintiffs' requested jury instructions. After the superior court denied that motion and entered judgment for ACIC, plaintiffs timely appealed. This court has jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and the Arizona Revised Statutes (A.R.S.) sections 12-2101(A)(1), (5)(a) (2014).[2]

## DISCUSSION

¶17         Plaintiffs argue the superior court (1) erred in denying their discovery request for an unredacted copy of ACIC's claim file; (2) erred in denying their motion for partial summary judgment on ACIC's misrepresentation defense; (3) abused its discretion in admitting into evidence Exhibit 35; and (4) abused its discretion in declining to give two jury instructions plaintiffs requested. The court addresses these claims in turn.

## I.      Discovery Of ACIC's Unredacted Claim File.

¶18         Plaintiffs sought production of ACIC's claim file in discovery. ACIC asserted, and the superior court found, various documents in the claim file were privileged in whole or in part. After an in-camera review by a special master, plaintiffs obtained discovery of unredacted as well as partially redacted documents from the claim file and other documents were not produced given the privilege finding. On appeal, plaintiffs argue that the failure to require production of all claim file documents in unredacted form constitutes reversible error. Specifically, plaintiffs argue the superior court erred in refusing to order discovery of ACIC's unredacted claim file because (1) Perry was acting as a claims investigator for ACIC, not as an attorney and (2) ACIC waived any applicable attorney-client privilege. This court reviews discovery matters and rulings on assertions of attorney-client privilege for an abuse of discretion. *State Farm Mut. Auto. Ins. Co. v. Lee*, 199 Ariz. 52, 57, ¶ 12, 13 P.3d 1169, 1174 (2000). The superior court has broad discretion in discovery matters, which "includes the right to decide controverted factual issues, to draw inferences where conflicting inferences are possible

---

[2] Absent material revisions after the relevant dates, statutes cited refer to the current version unless otherwise indicated.

and to weigh competing interests." *Id.* at 57, ¶ 12, 123 P.3d at 1174. (emphasis omitted).

¶19        Arizona's attorney-client privilege states:

> B. [A]ny communication is privileged between an attorney for a corporation . . . or an employer and any employee, agent or member of the entity or employer regarding acts or omissions of or information obtained from the employee, agent or member if the communication is either:
>
> 1. For the purpose of providing legal advice . . . [or]
>
> 2. For the purpose of obtaining information in order to provide legal advice . . . .

A.R.S. § 12-2234(B). To constitute a privileged communication: (1) there must be an attorney-client relationship; (2) the communication must be made to or by the lawyer for the purpose of securing or giving legal advice and (3) the communication must be made in confidence and treated as confidential. *See Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 501, 862 P.2d 870, 874 (1993), *superseded by statute on other grounds*, 1994 Ariz. Sess. Laws, ch. 334, § 1 (2d Reg. Sess.). Even if the privilege applies, it does not relieve the employee "of a duty to disclose the facts." A.R.S. § 12-2234(C). In other words, the underlying facts of the communication are discoverable, but the communication itself is not.

### 1.    The Superior Court Did Not Err In Finding The Attorney-Client Privilege Applied.

¶20        Plaintiffs argue that Perry acted in the role of claim investigator -- not attorney -- meaning the communications were not "for the purpose of securing or giving legal advice." For the attorney-client privilege to apply, the attorney must be acting in the role of legal counsel. *Goodfarb*, 176 Ariz. at 501, 862 P.2d at 874. After reviewing sample documents in- camera, the superior court ultimately found that Perry was acting in the role of legal counsel. The superior court stated, "[t]hough defense counsel did conduct some investigation into Plaintiff's claim, such investigation does not then render all communication between Defendant and its counsel automatically discoverable." This statement was made after two rounds of briefing and two oral arguments on the subject (and

after having reviewed the sample documents). The superior court found Perry both involved himself in the claim investigation and provided legal advice in confidence. Ultimately, only portions of the communications within the claim file were redacted or found completely privileged by the special master; the remaining portions of the claim file were disclosed to plaintiffs. This record indicates the superior court correctly applied Arizona's attorney-client privilege to the facts of this case.[3]

## 2. The Superior Court Did Not Err In Determining ACIC Did Not Waive The Attorney-Client Privilege.

¶21 Plaintiffs argue that, even if the attorney-client privilege applied to the redacted communications, ACIC waived the privilege by putting its representatives' mental state at issue. "Whether a party has waived the attorney-client privilege is a mixed question of law and fact which [this court] review[s] de novo." *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 254, ¶ 10, 63 P.3d 282, 285 (2003).

¶22 ACIC did not expressly waive the attorney-client privilege. As applied, the attorney-client privilege may be waived impliedly when an insurance company (1) relies on an "advice-of-counsel" defense or (2) argues that claim denial and investigation were reasonable because of the company's subjective evaluation of the law provided by its counsel. *See Lee*, 199 Ariz. at 58, ¶ 17, 13 P.3d at 1175. As to this second type of implied waiver, a "litigant claiming the [attorney-client] privilege relies on and advances as a claim or defense *a subjective* and allegedly reasonable evaluation of the law—but an evaluation that necessarily incorporates what the litigant learned from its lawyer—the communication is discoverable and admissible." *Id.* at 58, ¶ 15, 13 P.3d at 1175 (emphasis both added and removed). If a party, however, relies solely on objective reasonableness and merely consults an attorney to evaluate the

---

[3] Along with citing cases applying privilege law from other jurisdictions, plaintiffs rely on *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160 (D. Minn. 1986) in arguing the superior court erred. *Lilly,* however, (1) did not apply Arizona's statutory attorney-client privilege and (2) is distinguishable factually. In *Lilly*, the firm representing the insurance company was hired immediately after submission of the claim and doubled as the sole investigator of the claim. *Id.* at 162-63. By contrast, while Perry participated in a portion of the investigation, he was hired only after ACIC's initial investigation, was not the sole claim investigator and provided legal services to ACIC.

reasonableness of its position, there is no implied waiver. *See id.* at 60, 65, ¶¶ 22, 35, 13 P.3d at 1177, 1182. As applied, the dividing line rests on whether ACIC ever put the advice it received from counsel at issue or whether it ever took a position on whether its subjective view of the law was reasonable (and, if so, whether that subjective view necessarily incorporated advice from its counsel). *See Mendoza v. McDonald's Corp.*, 222 Ariz. 139, 152, ¶ 40, 213 P.3d 288, 301 (App. 2009).

¶23 Starting with advice of counsel, ACIC argues it "never . . . relied on the 'advice of counsel' defense." The superior court similarly found that ACIC's defense was not based on advice of counsel. Moreover, the trial evidence focused on whether ACIC's investigation was reasonable and performed in good faith. Plaintiffs note that trial testimony indicated that ACIC's "decision [to deny plaintiffs' claim] was based on Mr. Perry's investigation and legal advice." This argument, however, fails to show that ACIC ever expressly relied on the advice of counsel defense.

¶24 Turning to implied waiver based on a subjective evaluation of the law, Arizona "reject[s] the idea that . . . the denial of bad faith, or the affirmative claim of good faith may be found to constitute an implied waiver." *Lee*, 199 Ariz. at 62, ¶ 28, 13 P.3d at 1179. Nor does "relying on a defense of objective reasonableness" constitute an implied waiver. *Id.* at 65, ¶ 35, 13 P.3d at 1182. Instead, for implied waiver, a party must claim its actions "were the result of its reasonable and good-faith belief that its conduct was permitted by law *and* its subjective belief based on its claims agents' investigation into and evaluation of the law." *Id.* at 66, ¶ 38, 13 P.3d at 1183. This inquiry requires an analysis of ACIC's defense and actions.

¶25 ACIC's defense was that its denial of the claim was "objectively reasonable." In arguing ACIC relied on a subjective belief, plaintiffs cite to trial testimony discussing ACIC's reliance on Perry's (1) "financial analysis" of plaintiffs' financial records and (2) advice in asserting plaintiffs did not have an ownership interest in the ring as a basis for denial of the claim.

¶26 ACIC retained Perry to conduct plaintiffs' EUOs after conducting its initial investigation and determining testimony under oath was warranted. After the EUOs—in which plaintiffs refused to provide certain financial information—a note from an ACIC employee stated "I am going to work with [defense counsel] in putting together a list of documents we are going to request the insured to provide." The next day, Perry requested in writing plaintiffs' financial documents and phone

records. When plaintiffs failed to produce the requested documents, an ACIC claims supervisor noted the lack of documentation of the ring purchase and other fraud indicators, and suggested plaintiffs' "continued failure to [supply the requested records] may constitute an independent reason for denial. I suggest counsel pursue the following language" and provided draft language for a letter. David Tonkin, ACIC's national claims examiner, asked Jay Studebaker, the general adjuster for the claim, to draft a letter to plaintiffs informing them that no further consideration would be given to their claim unless they produced the requested financial information. Studebaker then noted that he would prepare a letter, with assistance from Perry, and then mailed a letter to plaintiffs incorporating suggested language. While Perry was involved in obtaining plaintiffs' financial records, ACIC was heavily involved in the decision-making and factual analysis. Nothing suggests ACIC put its subjective reasonableness at issue in procuring plaintiffs' financial records.

¶27        Plaintiffs then provided some financial records to ACIC. Notes in the claim file indicate ACIC had Perry review the financial records to obtain legal advice on how the records might affect plaintiffs' claim. Perry ultimately provided ACIC summaries of plaintiffs' financial records, which include information ACIC relied upon in denying plaintiffs' claim. Those summaries, which were based on information plaintiffs themselves provided, were produced to plaintiffs in discovery and were admitted into evidence at trial. ACIC's reliance on objective data that counsel summarized (and produced to plaintiffs) does not itself put ACIC's subjective intent at issue.

¶28        Plaintiffs also argue waiver because ACIC purportedly relied on Perry's analysis "regarding the ownership requirement of A.R.S. § 20-1105." Plaintiffs, however, have not shown how reliance on the express terms of a statute constitutes a subjective belief resulting in an implied waiver of the privilege. *Lee*, 199 Ariz. at 66, ¶ 38, 13 P.3d at 1183. Moreover, unlike in *Lee*, ACIC told plaintiffs why ACIC determined ownership of the ring had not been established based on objective information. Specifically, lack of a pre-purchase appraisal, inability to provide information or details regarding the seller, lack of a receipt, sales contract or any records surrounding the purchase of the ring were all facts ACIC cited. These are also facts plaintiffs have been aware of based on ACIC's numerous letters unsuccessfully requesting such information. *Lee* makes clear that evaluating an insurance company's reasonableness "under the statutes, the case law, and the policy language" does not "put counsel's advice to the claims managers at issue." *Id.* at 60, ¶ 22, 13 P.3d at 1177.

¶29            ACIC did not base its decision to deny the claim on the advice of counsel or a subjective interpretation of the law. Investigation continued for several months after ACIC determined that lack of ownership was a defense, and ultimately the decision to deny the claim culminated after several meetings where ACIC managers reviewed the facts available. Finally, ACIC's trial defense was that its decision to deny plaintiffs' claim was objectively reasonable under all of the facts it had before it. As the *Lee* court made clear:

> We assume client and counsel will confer in every case, trading information for advice. This does not waive the privilege. We assume most if not all actions taken will be based on counsel's advice. This does not waive the privilege. Based on counsel's advice, the client will always have subjective evaluations of its claims and defenses. This does not waive the privilege.

*Lee*, 199 Ariz. at 66, ¶ 38, 13 P.3d at 1183. Thus, the record fairly reflects that ACIC asserted an objective reasonableness defense, not a "subjective belief based on its claims agents' investigation into and evaluation of the law." *Id.* Because that required "one more factor" was not present, *id.*, the superior court did not err in finding ACIC had not waived the attorney-client privilege to the entire ACIC claim file.[4]

## II.     The Superior Court Did Not Err In Admitting Exhibit 35 Into Evidence.

¶30            Plaintiffs argue that the superior court erred in admitting into evidence Exhibit 35, identified as a computer screen printout from the oral application for insurance in July 2006 that an ACIC representative obtained from Nguyen. Plaintiffs claim Exhibit 35 lacked a proper foundation and was not admissible under Arizona Rule of Evidence 803(6). This court reviews a ruling on the admissibility of evidence for an abuse of discretion. *State v. McCurdy*, 216 Ariz. 567, 571, ¶ 6, 169 P.3d 931, 935 (App. 2007).

---

[4] In their reply brief on appeal, plaintiffs withdrew their argument that the superior court erred in denying their motion for partial summary judgment on ACIC's misrepresentation defense, meaning that issue is no longer part of this appeal.

¶31        Arizona Rule of Evidence 803(6) provides:

> *Records of a Regularly Conducted Activity.* A record of an act [or] event [is an exception to the rule against hearsay] . . . if:
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business . . . ;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and
>
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

The "at or near the time" requirement is "necessarily flexible rather than arbitrary and depend[s] upon the nature of the material recorded and other factors involved in the particular case." *Kemp v. Pinal Cnty.*, 8 Ariz. App. 41, 44, 442 P.2d 864, 867 (1968).

¶32        ACIC sought to introduce Exhibit 35 during direct examination of James Bartlett, an ACIC senior underwriting analyst. Plaintiffs objected and, during voir dire outside of the jury's presence, Bartlett testified that he did not have direct personal knowledge of the conversation reflected in Exhibit 35; that Exhibit 35 did not state who inputted the answers and that Exhibit 35 did not state that the record was made at or near the time the information was given. However, Bartlett testified to his knowledge of the ACIC computer system, adding that information would not be present in the system unless an ACIC customer service representative placed it there. Bartlett added that the information must have been entered "at or near the time that it's taken from the applicant," noting ACIC customer service representatives "have to ask those questions and they have to complete that part of the questionnaire, so that it can be uploaded to get a policy issued."

**¶33** After receiving this testimony, hearing argument and receiving ACIC's assurance that portions of customer service representative Michelle Canter's testimony would complete the required showing for admissibility, the superior court conditionally overruled plaintiffs' objections to Exhibit 35. In the jury's presence, Bartlett then provided testimony showing a foundation for the notes in Exhibit 35. Bartlett testified that underwriting had to follow up with Canter, who in turn contacted plaintiffs, to correct a question about whether they owned a trampoline. Bartlett also noted that Exhibit 35 listed Canter as requesting a follow up report on plaintiffs.

**¶34** Canter then testified that she had worked for ACIC as a customer service representative for at least four years before taking plaintiffs' application. While Canter could not remember the specific phone conversation with Nguyen, she stated the standard practice was to "bind" or "write" the policy, including identifying Exhibit 35 as "the upfront underwriting questions," that she "would have had to" complete to write the policy, and Exhibit 35 indicates she prepared the document for plaintiffs. Although Canter did not specifically recall completing Exhibit 35, she testified that she "would have had to, had [she] wrote [sic] the policy." Canter stated she understood Exhibit 35 to be the electronically recorded answers that she typed into the ACIC computer during a conversation she had with one of the plaintiffs. Canter also confirmed that she contacted plaintiffs regarding her error on whether they owned a trampoline.

**¶35** This testimony is at least minimally adequate to provide a foundation for the admission of Exhibit 35 and to show the document is admissible under Arizona Rule of Evidence 803(6). *See State v. Morales*, 170 Ariz. 360, 364, 824 P.2d 756, 760 (App. 1991) (testimony by custodian and nurse on regular business activity of linking trauma code name to a patient's identity was sufficient foundation under Rule 803(6), even though source of identity is not noted in records); *see also* 1 Joseph M. Livermore, Robert Bartels & Anne Holt Hameroff, *Arizona Practice Law of Evidence* § 803.6 at 361-63 (4th ed. 2000) (citing cases). Accordingly, the superior court did not abuse its discretion in receiving into evidence Exhibit 35 over plaintiffs' foundation and Arizona Rule of Evidence 803(6) objections.

### III. The Superior Court Did Not Err By Refusing To Give Plaintiffs' Requested Jury Instructions.

¶36 This court reviews a superior court's refusal to give a requested jury instruction for an abuse of discretion. *Brethauer v. Gen. Motors Corp.*, 221 Ariz. 192, 199, 211 P.3d 1176, 1183 (App. 2009). A superior court has substantial discretion in determining how to instruct a jury but must instruct the jury if: (1) the evidence supports the instruction; (2) the instruction is a correct statement of the law and (3) the issue is not otherwise covered. *Id.* at 199, 211 P.3d at 1183; *Smyser v. City of Peoria*, 215 Ariz. 428, 439, ¶ 33, 160 P.3d 1186, 1197 (App. 2007).

### A. Plaintiffs' Proposed Jury Instruction No. 4.

¶37 Plaintiffs argue that the superior court erred in refusing their proposed jury instruction number 4, which read: "An insurance company which knows of facts that preclude recovery under an insurance policy and fails to return the premiums paid by the insured is precluded from avoiding its obligation under the policy." This instruction sought to address ACIC's misrepresentation or fraud in the insurance application defense, one of three reasons cited by ACIC for denying the claim. The superior court refused the proposed instruction, which is not a Revised Arizona Jury Instruction (RAJI), because it was duplicative of an instruction not challenged on appeal.

¶38 As authority for the instruction, plaintiffs cited *Great American Reserve Ins. Co. of Dallas v. Strain*, 377 P.2d 583 (Okla. 1962) and *Security Insurance Co. of Hartford v. Andersen*, 158 Ariz. 431, 436-37, 763 P.2d 251, 256-57 (App. 1986), *vacated in part on other grounds*, 158 Ariz. 426 (1988), neither of which mandate giving the instruction in this case. Unlike this case, *Strain* applied Oklahoma law to decide whether an insurer waived a claim that an employee who had been "continuously confined as a bed patient" for ten days prior to his death was "not actually at work" when he died. 377 P.2d at 586. *Strain* has never been cited with approval in Arizona and *Anderson* found *Strain* "distinguishable." *Anderson*, 158 Ariz. at 436, 763 P.2d at 256. *Anderson*, in turn, addressed whether an insurer may be estopped from denying coverage after accepting and then retaining premiums. 158 Ariz. at 433, 763 P.2d at 253. On the facts of that case, *Anderson* concluded estoppel was not appropriate because, *inter alia*, the policy insured against types of loss other than the accident that was the subject of the litigation. *Id.* at 436, 763 P.2d at 256. As applied, the record indicates that ACIC paid plaintiffs for another loss under the

policy. Accordingly, the instruction does not appear to be a correct statement of the law as applied to the facts of this case.

¶39 ACIC did not rescind the policy but, rather, cancelled the policy effective on the policy's anniversary date. Such cancellation was expressly allowed under the policy terms. Plaintiffs are correct that ACIC argued rescission to the jury and the superior court gave a general rescission instruction to the jury "as part of the fraud in the application" defense. Plaintiffs, however, did not object to the general verdict form used, which did not require the jury to specify whether plaintiffs failed to meet their burden of proof or whether ACIC met its burden on a defense (and, if so, which one). Plaintiffs concede that there is no way to determine the basis of the verdict. This court will uphold a general verdict if evidence on any one issue or theory sustains the verdict. *Mullin v. Brown*, 210 Ariz. 545, 552, ¶ 24, 115 P.3d 139, 145 (App. 2005); *Murcott v. Best W. Int'l, Inc.*, 198 Ariz. 349, 361, ¶ 64, 9 P.3d 1088, 1100 (App. 2000). For this additional reason, plaintiffs have not shown that the superior court erred in failing to give plaintiffs' proposed jury instruction number 4.

## B.     Plaintiffs' Proposed RAJI (Civil) 4th Contract 26.

¶40 Plaintiffs assert that "a customer service representative from ACIC told Mr. Nguyen that ownership of jewelry could be established, and coverage purchased, based on an appraisal," a position plaintiffs claim was different than ACIC's post-claim position "that an insured must have a receipt or other proof of purchase to establish ownership of jewelry" to prove a loss. Plaintiffs claim these positions, coupled with policy language covering "personal property owned by or in the care of an insured," implicated the doctrine of reasonable expectations. Accordingly, plaintiffs requested the jury be given RAJI (Civil) 4th Contract 26, which states:

> In deciding what a contract provision means, you should attempt to determine what the parties intended at the time that the contract was formed. You may consider the surrounding facts and circumstances as you find them to have been at the time that the contract was formed. It is for you to determine what those surrounding facts and circumstances were.

> To determine what the parties intended the terms of a contract to mean, you may consider the language of the written agreement; the acts and statements of the parties themselves before any dispute arose; the parties' negotiations; any prior dealings between the parties; any reasonable expectations the parties may have had as the result of the promises or conduct of the other party; and any other evidence that sheds light on the parties' intent.

¶41        The superior court rejected this requested instruction, instead giving RAJI (Civil) 4th Contract 25, which the court found adequately covered the issues in dispute. The instruction as given reads as follows:

> When someone signs an agreement and has reason to know that what he/she is signing is a standardized, form agreement which is regularly used in that kind of transaction, he/she is bound by its terms regardless of whether he/she actually read or understood those terms.

> There is an exception to the rule I just stated. If you find that [ACIC] had reason to believe that Plaintiffs would not have signed the standardized agreement if Plaintiffs had known that a particular term was there, and if you find that Plaintiffs were in fact unaware that the particular term was there, that term is not part of the agreement and Plaintiffs are not bound by it.

On appeal, plaintiffs claim the superior court erred in failing to also include RAJI (Civil) 4th Contract 26 in the final jury instructions.

¶42        In claiming error, plaintiffs, rely in large part on the Restatement (Second) of Contracts § 211 (1981) expressly adopted in *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 387, 682 P.2d 388, 392 (1984). Section 211 reads as follows:

> (1) Except as stated in Subsection (3), where a party to an agreement signs or otherwise

> manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement with respect to the terms included in the writing.
>
> (2) Such a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.
>
> (3) Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement.

Restatement (Second) of Contracts § 211, *quoted in Darner*, 140 Ariz. at 396, 682 P.2d at 391. Section 211(2) does not appear to apply in this case and Sections 211(1) and (3) are closely paraphrased in, and covered by, RAJI (Civil) 4th Contract 25, quoted above and given to the jury. Accordingly, plaintiffs have not shown the superior court failed to instruct the jury on the standards contained in Restatement (Second) of Contracts § 211. *See also First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 218 Ariz. 394, 400, ¶ 31, 187 P.3d 1107, 1113 (2008) (Arizona's reasonable expectations doctrine provides that "a contract term is not enforced if one party has reason to believe that the other would not have assented to the contract if it had known of that term").

**¶43**       Noting the ACIC "insurance policy provides: 'We cover personal property owned by or in the care of an insured,'" plaintiffs argue the superior court was required to give RAJI (Civil) 4th Contract 26 to provide the jury guidance about how to construe this contractual language. This contract language, however, is a standardized contract term and, as such, is governed by RAJI (Civil) 4th Contract 25. Indeed, the Use Note for RAJI (Civil) 4th Contract 26 states that "[t]his instruction should not be given where the dispute concerns the meaning of a standardized contract term; in such a situation, the intent of the immediate parties to the contract is not controlling. *See* Restatement (Second) of Contracts § 211 comment e (1981)."

¶44      Apart from the fact that the jury was instructed on the Section 211 standard, and the Use Note in RAJI (Civil) 4th Contract 26, plaintiffs' argument in requesting RAJI (Civil) 4th Contract 26 was based on ACIC's purported representations about what was required to obtain coverage for personal property, not what was required to prove a loss and collect insurance proceeds. As ACIC notes, "[t]here is a large difference between adding an item of jewelry to a policy and demonstrating compliance with all of the policy's conditions[] in order to obtain payment for a jewelry loss." For these reasons, plaintiffs have not shown that the superior court erred in failing to give RAJI (Civil) 4th Contract 26.

## CONCLUSION

¶45      Finding no error, the jury verdict in favor of ACIC is affirmed. Both plaintiffs and ACIC request attorneys' fees on appeal pursuant to A.R.S. § 12-341.01 and Arizona Rule of Civil Appellate Procedure 21. Plaintiffs have not shown an entitlement to attorneys' fees on appeal. As the prevailing party, ACIC is awarded its reasonable attorneys' fees on appeal, and its costs on appeal, upon compliance with Arizona Rule of Civil Appellate Procedure 21.



Ruth A. Willingham · Clerk of the Court
FILED: MJT